No. 84-234

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF

R.M.B., Youth in Need of Care.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                In and for the County of Hill,
                The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

            Morrison, Barron & Young; Dennis G. Loveless,
            Havre, Montana

    For Respondent:

            David G. Rice, Deputy County Attorney, Havre,
            Montana
            Waldo Spangelo, Havre, Montana

Submitted on Briefs:    July 27, 1984

Decided:    October 16, 1984

Filed:    OCT 16 1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

L. B. appeals from an order of the District Court of the Twelfth Judicial District, Hill County, terminating the parent-child relationship between L. B. and R. M. B. and awarding permanent custody of the youth to the Montana Department of Social and Rehabilitation Services. We affirm the order of the District Court.

L. B. the appellant, is the natural mother of R. M. B. who was born on January 13, 1982. R. M. B.'s father has not been identified. In January of 1982, Anna Mae Fischli, a social caseworker for the Hill County Welfare Department, began investigating the appellant's ability to properly care for R. M. B. The investigation was prompted by a Health Department report that R. M. B. was a high risk child due to low birth weight, and the mother's difficulty with alcohol and inability to care for R. M. B. From January to November of 1982, the appellant's problem with alcohol and drug abuse worsened, culminating in two attempted suicides and hospitalization for treatment of delirium tremens in the fall of 1982. On September 22, 1982, the Hill County Welfare Department petitioned for a District Court order requiring the appellant to undergo treatment for mental illness and alcoholism, and requiring that R. M. B. be temporarily placed in a foster home. The petition was granted on November 23, 1982, and R. M. B. was placed in a foster home. The foster parents and social workers noted severe motor, social and cognitive developmental problems in R. M. B. At the age of eight months the child could not sit up or hold the head up and the child's arms and legs were rigid. The back of R. M. B.'s head was flat and bald. R. M. B. would not make eye

2

contact, would not respond to affection, and would flinch when anyone raised a hand in the vicinity of the child. R. M. B. never cried, and had a poor appetite.

While R. M. B. was in the foster home, appellant was being treated at Warm Springs State Hospital for serious mental illness. She was released from Warm Springs on March 17, 1983, and returned to Havre, Montana. During April and May, appellant was hospitalized on numerous occasions as a result of alcohol and drug abuse and severe depression.

On April 29, 1983, a petition was filed requesting that temporary custody of R. M. B. be awarded to the Department of Social and Rehabilitative Services for a period of six months. Following a hearing on the petition, an order awarding temporary custody was issued on May 19, 1983.

On May 3, 1983, appellant signed and agreed to the terms of a ninety day treatment plan, the eventual goal of which was to return custody of R. M. B. to the appellant. The treatment plan contemplated therapy for appellant's mental illness and alcoholism, as well as training to help appellant deal with her child's developmental problems. The treatment plan specifically stated that failure to comply with the plan could result in termination of appellant's parental rights. The District Court approved the treatment plan on May 6, 1983. The evidence indicated that the appellant failed to comply with the treatment plan.

In the period between September 7, 1982 to January 4, 1984, the appellant was hospitalized for a total of 220 days: 112 days at Northern Montana Hospital and 108 days at Warm Springs State Hospital, the Chemical Dependency Center in Glasgow, Montana, and the Midwest Challenge Program in Minneapolis, Minnesota. Appellant's hospitalizations were

3

mainly due to her problems with depression and suicidal tendencies, alcohol abuse, and drug overdoses. The latest hospitalization occurred on December 25, 1983, and was caused by a drug overdose which was apparently another attempt by appellant to commit suicide.

On September 21, 1983, Hill County filed a petition for permanent legal custody of R. M. B. and for termination of L. B.'s parental rights. A guardian ad litem was appointed for R. M. B. and a hearing on the petition was held on January 27, 1984, and February 28, 1984. Expert medical testimony at the hearing indicated that the appellant had a borderline personality with suicidal tendencies and major depressive illness. Other testimony indicated that appellant's mental illness and alcoholism were not conducive to a stable mother-child relationship, and that appellant's mental illness was unlikely to change within a reasonable time.

On March 26, 1984, the District Court issued its findings of fact and conclusions of law, along with an order terminating L. B.'s parent-child relationship with R. M. B. Custody of the child was awarded to the Montana Department of Social and Rehabilitation Services, which was authorized to consent to the adoption of R. M. B. L. B. appeals from the District Court's order of March 26, 1984.

The appellant's first contention is that the District Court committed reversible error by admitting hearsay evidence during the hearing on the petition for legal custody and termination of parental rights.

In particular, appellant argues that in four instances during the direct examination of the State's principal witness, hearsay material was admitted over proper objection. One of these instances involved the recollection by Anna Mae

4

Fischli of statements made by out-of-court declarants regarding the paternity of the infant, R. M. B. The court admitted this testimony over objection specifically to show that Fischli, a social worker for the Hill County Welfare Department, had made an effort to locate the father. This effort was necessary in order to determine if the infant fell within the definition of "Indian child" under the Indian Child Welfare Act. Thus the out-of-court statement was not offered to prove the truth of the matter asserted, i.e. paternity, and was admissible. Rule 801(c), M.R.Evid.

As to the three remaining hearsay objections, we agree with the appellant that the admitted statements constituted hearsay under Rule 801(c), M.R.Evid., and were therefore inadmissible under Rule 802, M.R.Evid.

However, we will not reverse the District Court where, as here, the error was harmless. Rule 61, M.R.Civ.P. The objectionable statements were amply corroborated by competent evidence entered into the record without objection. The gist of the three hearsay statements was that: (1) appellant was drunk while caring for her child; (2) appellant failed to meet a requirement of the court-approved treatment plan; and (3) the infant R. M. B. was rigid, unresponsive, and would not cry. Anna Mae Fischli, who was the chief social worker involved with L. B. and R. M. B., testified that in the course of her casework she had observed L. B. intoxicated while caring for R. M. B. Also, L. B. had reported to Fischli that she had struck the child in order to quiet R. M. B. while she was enduring hangovers. L. B. herself testified that she did not want her child around during those times when she was hungover. And the four medical doctors who

5

testified all recounted L. B.'s long history of alcoholism, which extends back at least to her pregnancy.

Fischli and her supervisor from the Hill County Welfare Office, Judith Rominger, both testified that L. B. had failed to meet the requirements of the court approved treatment plan despite their direct and continuing supervision. And Fischli, Barbara LaBrie (home trainer, Child and Family Services), and Jeanette Matter (foster parent) all testified that R. M. B. was rigid, unresponsive and developmentally retarded. Fischli and Matter testified that R. M. B. would not cry in order to call attention to personal needs.

We find that admission of the three hearsay statements did not affect the substantial rights of the appellant because the testimony was cumulative. Rule 61, M.R.Civ.P.; Thompkins v. Fuller (Mont. 1983), 667 P.2d 944, 953, 40 St.Rep. 1192, 1203.

The appellant's remaining specifications of error basically turn on the adequacy of the findings of fact and conclusions of law of the trial court. Specifically, appellant maintains that:

(1) The District Court abused its discretion in relying on the medical testimony of Doctors Lawrence Stineford and Lawrence Jarvis, while disregarding that of Dr. Brian Earle, Jean Lawton, a psychiatric nurse, and Pat Barron, an ex-employee of the Havre Mental Health Center.

(2) The District Court relied too heavily upon the respondent's proposed findings of fact and conclusions of law.

(3) The evidence is insufficient to support the findings and conclusions of the District Court, particularly the court's conclusion that the statutory criteria for the

6

termination of a parent-child relationship in this case had been met.

Although there is conflicting expert testimony on the record regarding L. B.'s fitness as a parent, "the credibility of witnesses and the weight given their testimony are matters exclusively within the province of the District Court in a nonjury case." Como v. Rhines (Mont. 1982), 645 P.2d 948, 951, 39 St.Rep. 932, 935. See also Speer v. Speer (Mont. 1982), 654 P.2d 1001, 1003, 39 St.Rep. 2204, 2206; Harris v. Harris (Mont. 1980), 616 P.2d 1099, 1102, 37 St.Rep. 1696, 1699. And while it is true that this Court has discouraged trial courts from excessive reliance on the proposed findings of fact and conclusions of law of the prevailing party, in Kowis v. Kowis (Mont. 1983), 658 P.2d 1084, 1088, 40 St.Rep. 149, 154, we stated the rule that:

> "where . . . findings and conclusions are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and are supported by the evidence, they will not be overturned simply because the court relied upon proposed findings and conclusions submitted by counsel."

A perusal of the trial court's findings and conclusions in this case reveal them to be comprehensive and pertinent to the issues presented to the court. They are in fact more extensive than the proposed findings and conclusions of the respondent and the changes made by the court are clearly substantive. Upon review, we conclude that the trial court has carefully considered all the relevant facts and issues involved, and had a solid basis upon which to make its decision.

The remaining question is whether the evidence is sufficient to support the findings and conclusions of the

District Court. Specifically, appellant argues that the evidence is insufficient to support the trial court's finding that (a) the appellant failed to comply with a court approved treatment plan, and (b) the appellant's condition which rendered her unfit to be a parent is unlikely to change within a reasonable time. Both findings are required in order for a district court to terminate a parent-child relationship, under section 41-3-609(1)(c), MCA.

This Court has long adhered to the standard of review which provides that we will consider only whether substantial credible evidence supports the findings and conclusions of the trial court. Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930. The findings of the court will not be set aside unless clearly erroneous. M.R.Civ.P. 52(a), Nunnally v. Nunnally (Mont. 1981), 625 P.2d 1159, 1162, 38 St.Rep. 529, 532.

A survey of the hearing transcript indicates that Anna Mae Fischli drew up a 90 day treatment plan which was approved by the District Court on May 6, 1983. The plan was discussed with and explained to the appellant, and appellant was made aware that failure to comply with the plan could result in a termination of parental rights. This term was specifically included in the plan. The plan required appellant to obtain regular therapy for her deteriorating mental condition as well as regular treatment for her chronic alcoholism. Appellant was required to meet regularly with a Family and Children Services caseworker, Barbara LaBrie, in order to develop her skills as a parent. She was also required to meet regularly with her Hill County Welfare Department caseworker, Anna Mae Fischli, in order to monitor progress under the plan.

Fischli and her supervisor, Judy Rominger, testified that appellant had substantially ignored the plan during its first month of operation. Upon their urging, appellant registered in the Midwest Challenge Program in Minneapolis for treatment of alcoholism. Appellant dropped this program after three days, but remained out of contact with Fischli for most of the second month of the plan's operation. Appellant began a local Alcoholics Anonymous program, but quit because in appellant's words "I don't get into that." The testimony of Fischli, Rominger and Barbara LaBrie indicate that regular treatment under the plan was severely hindered by appellant's inability or refusal to attend scheduled appointments.

Medical testimony presented by Doctors Jarvis and Stineford established that appellant was mentally ill with borderline personality, severe depression and strong suicidal tendencies. Both doctors recalled appellant's history of drug and alcohol abuse. Both doctors are qualified psychologists, and both felt that appellant's condition was likely to persist over time. Dr. Jarvis felt it would be a mistake to return the infant, R. M. B., to appellant's care due to her inability to resolve her problems with mental illness and drug and alcohol abuse. Jarvis also felt that the infant, R. M. B., was at a developmental stage that required a stable environment, which appellant could not provide. In the opinion of Dr. Jarvis, appellant simply lacked the necessary child-rearing skills to raise an infant properly.

Reviewing the evidence in a light most favorable to the respondent, we conclude that the findings and conclusions of the District Court are supported by substantial credible evidence. Burlingame v. Marjerrison (Mont. 1983), 665 P.2d 1136, 40 St.Rep. 1005; Wallace v. Wallace (Mont. 1983), 661 P.2d 455, 40 St.Rep. 430. We therefore affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices

10