No. 93-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF

F.H., J.K., and B.K.,
    Youths in Need of Care.

FILED

JUN 12 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The  Honorable  Maurice  R.  Colberg,  Jr.,  Judge
presiding.


COUNSEL OF RECORD:

        For Appellant:

               Paul E. Toennis; Oliver, Graves & Toennis,
               Billings, Montana

        For Respondent:


               Hon. Joseph P. Mazurek, Attorney General,
               Helena, Montana

               Curtis Bevolden, Attorney at Law, Billings
               Montana (For Department of Family Services)

               Damon Gannett; Gannett & Ventrell, Billings
               Montana (For Guardian At Litem)


                            Submitted on Briefs:   May 5, 1994

                                      Decided:   July 12, 1994

Filed:

Justice John Conway Harrison delivered the Opinion of the Court.

S.T., the natural mother of B.K. and F.H., appeals an order of the Thirteenth Judicial District Court, Carbon County, which granted the Department of Family Services (DFS) temporary custody of B.K. and F.H. until age eighteen. We affirm.

Two issues are presented:

I Did the District Court err by failing to dismiss the youth court action after DFS admitted that it failed to follow the statutory procedure of § 41-3-301, MCA (1991)--the 48-hour rule?

II Did the District Court err by awarding DFS temporary custody of B.K. and F.H. until age eighteen?

S.T. is the natural mother of J.K., B.K. and F.H. J.K. is currently eighteen years of age, while B.K. is thirteen and F.H. is five.

DFS has had contact with S.T. and her children since August 3, 1989. From late 1989 through early 1991, DFS was granted temporary custody of the children for four six-month intervals. During this time, S.T. signed four treatment plans, none of which were completed.

In February 1991, DFS requested an additional six months temporary custody of the children. Prior to any hearing on the request, the parties entered a stipulation for family reunification and S.T. signed another treatment plan.

Based on S.T.'s minimal compliance with that treatment plan, and since S.T. signed a voluntary agreement to continue working

2

with DFS, on October 3, 1991, DFS requested dismissal of the temporary custody order. From December 1991, to January 1992, various concerns surfaced over the children's stability, educational, emotional and health needs.

On January 28, 1992, DFS, pursuant to the emergency protection statute--§ 41-3-301, MCA--removed B.K. and F.H. from S.T.'s home. J.K. refused placement and remained in the household. On February 10, 1992, DFS filed a petition for the termination of S.T.'s parental rights and permanent custody of the three children. On February 13, 1992, DFS amended the petition to terminate S.T.'s parental rights and sought permanent custody of B.K. and F.H. DFS also petitioned for temporary custody of J.K. until she reached age eighteen. DFS and S.T. also executed another treatment plan which S.T. did not complete during the eight months before trial.

On March 20, 1992, S.T. moved the District Court to dismiss the petition since DFS failed to file the termination and permanent custody petition within 48 hours after using the emergency placement statute--§ 41-3-301, MCA--to take the children. The court denied this motion and the trial commenced on November 20, 1992. The court issued its findings of fact and conclusions of law and granted DFS temporary custody of B.K. and F.H. until age eighteen. B.K. and F.H. were put in foster care and S.T. was allowed visitation, while J.K. remained in the physical custody of S.T. subject to DFS supervision.

I

Did the District Court err by failing to dismiss the youth

3

court action after DFS admitted that it failed to follow the statutory procedure of § 41-3-301, MCA (1991)--the 48-hour rule?

DFS conceded that the petition for termination and permanent custody was not filed within 48 hours of the children's emergency placement. On that basis, S.T. moved to dismiss the petition. The District Court denied S.T.'s motion to dismiss and stated:

> a sanction of dismissal of a case involving kids to be protected is not appropriate . . .[;] there would have to be some other remedies for violating [the 48-hour rule] other than dismissal of a petition . . . .

The court carefully balanced the technical statutory requirements against the children's best interest and ultimately decided to protect the children.

When, as here, a district court "engages in discretionary action which cannot be accurately characterized as a finding of fact or conclusion of law[,]" we review the district court's decision to determine whether the court abused its discretion. Matter of D.H. and F.H. (Mont. 1994), 872 P.2d 803, 806, 51 St.Rep. 386, 388 (citation omitted). While we consider DFS' conduct unconscionable--not filing a petition within 48 hours--the conduct does not warrant dismissal of the petition and is not reversible error.

In matters involving abused and neglected children we have consistently held that a district court may protect the children's best interest despite procedural errors. See Matter of S.P. (1990), 241 Mont. 190, 196, 786 P.2d 642, 645-46 (held harmless error when DFS failed to provide father five days notice of hearing); Matter of R.A.D. (1988), 231 Mont. 143, 155, 753 P.2d

4

862, 869 (held no reversible error when court failed to grant fourth continuance to mother who was in a psychiatric hospital); Matter of R.M.B. (1984), 213 Mont. 29, 33-34, 689 P.2d 281, 283 (held harmless error when court admitted hearsay); Matter of C.L.A. and J.A. (1984), 211 Mont. 393, 399-400, 685 P.2d 931, 935 (held harmless error when court did not allow parents to cross-examine state witness as to the best interest of the children); Matter of M.E.M. (1984), 209 Mont. 192, 195-98, 679 P.2d 1241, 1243-45 (held no error when there were alleged violations of the Indian Child Welfare Act); and Matter of A.J.S. (1981), 193 Mont. 79, 86-87, 630 P.2d 217, 222 (held harmless error when the district court's final order of termination was twenty months after DFS removed the child from the home).

In this case, even though the petition was not filed until thirteen days after the emergency placement of the children, the District Court did not abuse its discretion when it concluded that the children's best interest precluded dismissing the petition. Any error in not following the strict procedure of § 41-3-301, MCA, was harmless since the best interest of the children was the primary concern and since S.T.'s due process rights were not violated. In fact, S.T. received notice of each hearing, was present at each hearing and presented evidence through her court-appointed attorney at each hearing. The final termination hearing was held some eight months after the petition was filed and during that time S.T. was afforded another opportunity to complete a treatment plan. We hold that S.T.'s rights were not prejudiced by

5

the failure to file the petition within 48 hours and, thus, the District Court correctly denied her motion to dismiss the petition. We also sound a stern warning to DFS to strictly follow the statutory procedure in future cases or we will, in no uncertain terms, punish its conduct which may result in potential harm to abused and neglected children--the very children that DFS is supposed to protect.

II

Did the District Court err by awarding DFS temporary custody of B.K. and F.H. until age eighteen?

DFS petitioned the District Court for termination of S.T.'s parental rights and permanent custody of B.K. and F.H. S.T. argues that the petition was factually insufficient to terminate her parental rights, since the petition alleged that she did not comply with a treatment plan. According to S.T. no treatment plan was in effect when the petition was filed and, thus, the District Court erred by not dismissing the petition for failure to state a cause of action. However, we note that after the petition was filed DFS and S.T. agreed to enter a treatment plan which S.T. had eight months to complete. She failed to complete the plan by the time of the final hearing. We conclude that the District Court did not abuse its discretion when it failed to dismiss the petition. The petition, on its face, stated a cause of action and facts were developed to prove that S.T. did not comply with the treatment plan.

Moreover, the District Court did not terminate S.T.'s parental

6

rights.  Even though the court found that the evidence justified termination of S.T.'s parental rights, the court--concerned with the children's best interest--granted DFS temporary custody until B.K. and F.H. reached age eighteen.

Once a district court determines that a child is a youth in need of care--abused, neglected or dependent--it may grant DFS temporary custody of that child until age eighteen.  Matter of A.H., T.H., and J.A.H. (1989), 236 Mont. 323, 328-29, 769 P.2d 1245, 1249.  Here, the District Court properly found that B.K. and F.H. were youths in need of care pursuant to § 41-3-102(11), MCA (1991).  After a careful review of the record we hold that the District Court did not abuse its discretion when it granted DFS temporary custody of B.K. and F.H. until age eighteen.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

7

Justice James C. Nelson specially concurs.

I am satisfied that Justice Gray's dissent is more legally correct than is our opinion. I, nevertheless, concur in the Court's opinion only because I cannot conclude, on balance, that the right of the mother to parent should take precedence over the rights of the children to be free from abuse and neglect, when the deciding factor is a technical violation of the 48 hour filing deadline and where the mother has, otherwise, had ample opportunity for notice and hearing. In joining our opinion, however, I do not in anyway condone DFS' failure to comply with the statute; there is simply no justification for a public agency which is charged with the responsibility of protecting fundamental rights, to not comply with both the letter and spirit of the laws that govern its operations. As Justice Gray correctly points out, it is, perhaps, the unfortunate, but understandable, reluctance of the judiciary to stringently enforce the letter of the law when to do so might adversely affect the welfare of a child, that encourages and contributes to the sort of administrative laxity that brings this case before the Court. If the 48 hour deadline is unworkable, then the legislature should change it. Unless and until it does, however, the requirements of the law are clear, and DFS has the obligation to comply. Hopefully some future abused or neglected child will not suffer from DFS' failure to recognize the seriousness of this situation, when his or her case becomes the straw that breaks the camel's back.

_____
                        Justice

8

Justice Karla M. Gray, dissenting.

I must respectfully dissent from the Court's opinion on issue 1, regarding whether the District Court erred by failing to dismiss the youth court action after DFS admitted it failed to follow the 48-hour time requirement contained in § 41-3-301, MCA (1991). Because it is my view that the District Court must be reversed on that issue, I would not reach issue 2.

Cases involving youths in need of care are among the most difficult faced by this Court. I have on a number of occasions joined the Court in allowing DFS to depart from relatively clear statutory requirements. On some of those occasions and not unlike my brethren, I suspect, I have done so because of the overriding and overwhelming importance of protecting the best interests of the children of Montana. In this case involving an emergency situation for which a clear and unequivocal statutory time frame has been imposed by the legislature and where we previously have warned DFS' predecessor agency regarding its failure to comply with the law, I cannot agree with the Court that it is sufficient to characterize DFS' conduct as unconscionable and issue another warning.

The statute at issue here needs no interpretation; it provides that, absent circumstances not at issue here, "[a] petition shall be filed within 48 hours of emergency placement of a child . . . ." Section 41-3-301(3), MCA (1991). Here, DFS admits that it did not meet the statutory requirement. On motion for dismissal by the natural mother, S.T., it is my view that the District Court was

9

required to dismiss the action on the basis of DFS' failure to comply with the clear statutory mandate.

The Court quotes the District Court's discomfort with dismissal under the statute:

> [A] sanction of dismissal of a case involving kids to be protected is not appropriate . . . [;] there would have to be some other remedies for violating the [48-hour rule] other than dismissal of a petition.

This is almost certainly the same kind of reaction most of the judiciary, including myself and this Court, has had to the prospect of dismissing a petition. At the very least, we are as judges extremely troubled at the idea that a child ultimately could be harmed by our requiring DFS to comply with the law. The problem with this approach is that it results in judicial amendment of legislative enactments; because of our fear, we conclude that dismissal of a case "involving kids to be protected is not appropriate." Similarly, while we might wish--with the District Court--that there were some other remedy for a violation of the 48-hour rule by DFS, the legislature has provided no such remedy. Whatever our fears, the fact remains that the legislature has enacted a mandatory time frame within which DFS must file a petition in an emergency protective services situation pursuant to § 41-3-301, MCA (1991). It is our job to require adherence.

Furthermore, we previously have condemned disregard of the statutory 48-hour rule by DFS' predecessor agency:

> [T]his Court strongly condemns the negligent disregard of [the predecessor statute] by the SRS and county attorney. By statute, a petition shall be filed within 48 hours following the emergency removal and placing of a youth in a protective facility. SRS failed to comply in this

10

> case. SRS was acting under the guise of the law when it removed the children. SRS therefore has a duty to strictly adhere to the requirements of that same law. Removal of children from their parents is an area too sensitive to allow any abuse or noncompliance of the law.

In re Gore (1977), 174 Mont. 321, 329, 570 P.2d 1110, 1115 (emphasis in original). This clear statement of the duty to comply with the statute apparently had no impact whatever in how state agencies regard the law and this Court. Yet, in the case now before us, the Court not only does not require adherence by dismissing DFS' petition, it ignores its own clear warning in In re Gore that the statute would be applied as written in the future. I simply cannot fathom this Court allowing itself, the district courts and the families of Montana to be held hostage by DFS in such a manner.

Moreover, the Court incorrectly applies an abuse of discretion standard to the District Court's action in determining whether to dismiss the petition for failure to comply with the 48-hour rule. While it is true that that standard applies to "discretionary actions" and was properly applied to the question of abandonment in Matter of D.H. and F.H., on which the Court relies, it is my view that no discretion was involved here because the statute is clear and unequivocal in requiring that a petition be filed within 48 hours. If the statute provided for the kind of "careful balancing" between the statutory time requirement and the best interests of the children the Court seems to suggest would be appropriate, I would agree to the application of the abuse of discretion standard. The statute, however, does not so provide.

11

Nor is the "remedy" or result here inappropriate or difficult to conceptualize. The DFS petition should be dismissed for failure to comply with § 41-3-301(3), MCA (1991), and the children returned to their home. If and when DFS is prepared to pursue the matter within legal strictures imposed by the legislature to protect the very fundamental and critically important rights of both the mother and the children, it should do so.

The courts of Montana have labored diligently to prevent potential harm to children by countenancing errors by DFS not permitted by applicable statutes. We have done so, as the Court observes, in matters "involving abused and neglected children." But the operating premise seems to be based on an ex ante conclusion that the children are, indeed, abused and neglected. In other words, we allow DFS to far overstep its bounds presuming from the outset that DFS' determinations about the children are correct. In addition, none of the many cases cited by the Court for allowing such "procedural errors" involves this most intrusive act by DFS of removing children from their parents and their home in advance of any court proceedings whatsoever; those cases involve procedural occurrences well after the initiation of court proceedings to oversee DFS' actions.

It is my view that this is the place where we must draw the line. We must recognize that parents have rights, too; that the children's "best interests" do not automatically coincide with DFS' view of those interests; that permitting DFS to act under an "emergency" statute designed to protect the rights of all concerned

12

simply does not square with allowing it to simultaneously disregard the time requirements of that statute. As all of us are held accountable by the law for our actions, so must we hold DFS accountable to legal requirements imposed on its actions by the legislature. To do otherwise is to place an agency of government both above and beyond the law. Notwithstanding the importance of DFS' mission, I cannot agree with such a result.

_____
Justice

13