FILED

07/21/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0702

DA 19-0702

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 186N

IN RE THE MARRIAGE OF:

STEVAN STREIT WILLIAMS,

      Petitioner and Appellee,

  v.

LINDSAY MARIE WILLIAMS,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DR 15-13
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         George T. Radovich, Attorney at Law, Billings, Montana

      For Appellee:

         Jo Messex Casey, Hendrickson Law Firm, P.C., Billings, Montana

Submitted on Briefs:  June 10, 2020

Decided:  July 21, 2020

Filed:

_____
              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Lindsay Williams (Lindsay) appeals from the Amended Findings of Fact, Conclusions of Law, and Order issued by the Twenty-Second Judicial District Court, Stillwater County, on November 19, 2019. We affirm. This is the second time this Court has been asked to review a district court decision regarding the parenting of the Williams children.

¶3     Lindsay married Stevan Williams (Stevan) on July 10, 1999, and the parties divorced by dissolution decree entered on November 18, 2016. Lindsay and Stevan have three children, G.M.W. (16 years old); G.L.W. (12 years old); and T.R.W. (11 years old). Stevan, G.M.W., and T.R.W. are deaf, and G.M.W. and T.R.W. have cochlear implants. In the summer of 2015, the parties stipulated to an interim parenting plan of alternating weeks and continued to follow that schedule until Lindsay moved to Lewistown, Montana, in August 2016. The parties then agreed the children would reside with Stevan in Columbus, Montana, and see Lindsay on alternating weekends and holidays with additional time in the summer until the District Court reached a decision on their parenting plan.

¶4 The District Court held a hearing on the parties' parenting issue on July 17, 2017, and entered an order on October 11, 2017, which provided for the parties' Final Parenting Plan (Parenting Plan). The court found that both parents were fit and had good relationships with the children, and that the children were bonded with both parents. However, the District Court held that the children's interests were best served by continuing to reside in Columbus, given the children had lived in Columbus their entire lives, had numerous relationships and attachments, and had excelled in school there. The court made clear to Lindsay that the children would reside with her if she established a home in the Columbus area, but would remain with Stevan if she did not. Lindsay opted to remain in Lewistown, and the children have continued to reside primarily with Stevan since that time. Lindsay appealed the October 2017 order, and this Court affirmed the District Court's Parenting Plan in all respects on September 11, 2018. *In re Marriage of Williams*, 2018 MT 221, 392 Mont. 484, 425 P.3d 1277.

¶5 On December 4, 2017, less than two months after the District Court issued the Parenting Plan—and while Lindsay's appeal thereof was still pending with this Court— Lindsay filed a motion to change the Parenting Plan. Lindsay requested the District Court interview the children and asked that a Guardian Ad Litem and counselor be appointed. On January 2, 2018, before the District Court issued its ruling on Lindsay's motion to change the Parenting Plan, Lindsay failed to return the children as required by the District Court's October 2017 order. The court was forced to issue an ex parte order on January 4, 2018, providing that, "if necessary, law enforcement officials assist with the return of the children." Lindsay was held in contempt for failing to return the

3

children to Columbus as required. On January 9, 2018, the District Court denied Lindsay's motion to change the Parenting Plan and ordered Lindsay to pay Stevan's attorney fees and costs incurred in responding to the motion.

¶6 Lindsay then barraged the District Court with multiple motions, including requests that the court withdraw its contempt order; that the court rule on the motion to withdraw the contempt order; and that the court sanction Stevan's counsel. On March 6, 2018, the District Court denied Lindsay's motion to withdraw the contempt order, and explicitly warned Lindsay and her counsel that "filing of further motions or other documents that multiply proceedings in th[e] case w[ould] result in appropriately severe sanctions." The March 2018 order also noted that Lindsay had attempted to enroll the children in school in Lewistown on January 3, 2018, in direct violation of the court's October 2017 order. On March 19, 2018, the District Court denied Lindsay's motion for sanctions and appointed a counselor for the children, Cherish Roberts (Roberts), with acknowledgement that Roberts worked in an office with multiple counselors and that the children would likely have different counselors.

¶7 On March 1, 2019, Lindsay filed a petition for modification of the Parenting Plan, asking the District Court to designate Lindsay as the primary parent, to permit the children to move to Lewistown, and to adopt a parenting plan already rejected by the court two years earlier. Stevan moved to dismiss the petition, asserting that Lindsay had failed to demonstrate a change of circumstances as required by § 40-4-219, MCA. Lindsay involved the children in the proceedings by having two of them, G.L.W. and G.M.W., sign affidavits in support of her petition. Shortly thereafter, Roberts provided

4

an affidavit to the District Court stating that the children were diagnosed with child psychological abuse by Lindsay and that additional time with Lindsay would be detrimental to the children's mental health. Roberts also provided the District Court with a report, created on behalf of each child's counselor and Roberts herself, stating: (1) the children each have varying levels of psychological dysfunction which could result in long-term consequences; (2) each child was being treated for serious mental health issues because of loyalty conflicts forced by Lindsay; (3) the counselors had growing concerns about the children's safety; (4) Lindsay was unwilling to work with the counselors; and (5) Lindsay should be limited to professionally supervised visits until the children received a psychological evaluation and until a comprehensive parenting re-evaluation could be conducted.

¶8    In response to Roberts's report to the District Court, Stevan filed an ex parte emergency motion to amend the Parenting Plan pursuant to § 40-4-220(2)(a)(ii), MCA (providing that a court may temporarily amend a previously ordered parenting plan ex parte where "an emergency situation has arisen in the child's present environment that endangers the child's physical, mental, or emotional health and an immediate change in the parenting plan is necessary to protect the child"). The District Court granted Stevan's ex parte motion on May 30, 2019, and ordered that Lindsay's contact with the children be professionally supervised, based on Roberts's recommendation and expert opinion that the children may suffer permanent emotional and psychological damage if they remained subject to Lindsay's continued attempts to alienate the children from their father.

¶9      When a court issues an ex parte order for an interim parenting plan under § 40-4-220(2)(a)(ii), MCA, it is required to hold a show cause hearing within 21 days, giving the parties an opportunity to show why the interim parenting plan should not remain in effect until further order of the court.  Section 40-4-220(2)(b), MCA.  In the present case, the District Court held a scheduling conference on June 3, 2019, but did not set a show cause hearing at that time given that "[s]cheduling a hearing [on the ex parte order] was complicated by the schedules of each attorney, each party's expert witnesses, and the availability of qualified sign language interpreters."  On June 26, 2019, Lindsay filed a motion to quash the May 30, 2019 ex parte order, because the District Court failed to hold a show cause hearing within 21 days as required by § 40-4-220(2)(b), MCA.  On July 15, 2019, Lindsay filed a motion for immediate relief on the same basis.  Stevan objected and filed responses to both motions.  On July 24, 2019, the District Court coordinated the interpreters, parties, and witnesses, and scheduled a hearing on all pending motions and petitions for August 12, 2019.  Shortly thereafter, on August 1, 2019, Lindsay filed a motion with the District Court requesting that the court either interview G.L.W. and G.M.W. in chambers to ascertain their wishes as to their residence pursuant to § 40-4-214(1), MCA, or permit them to testify in court.  The District Court reserved ruling on Lindsay's request to interview the children until the court heard testimony and other evidence regarding the children's mental health and treatment at the August 12, 2019 hearing.

¶10     At the August 12, 2019 hearing on all pending motions and petitions, the District Court denied Lindsay's motion to quash the ex parte order and her motion for

6

immediate relief. The court's Amended Findings of Fact, Conclusions of Law, and Order, issued on November 19, 2019, further explained the court's rationale for denying these motions. The District Court reasoned that, although there was a 21-day hearing requirement on its ex parte order, Lindsay's constitutional rights were not violated by the delay. Although Lindsay's contact with the children was limited to professionally supervised visits, she was not denied contact altogether; nor was she prohibited from seeing the children. The District Court held that Lindsay refused to take advantage of opportunities to remain in contact with her children because she did not like the parameters set by the court. Given the children's best interests, complexities of scheduling involving the court, the parties, the attorneys, two qualified sign language interpreters, expert witnesses that each party asserted were necessary, and Lindsay's request for the children's counseling records, the District Court found that a hearing on all the issues was the appropriate remedy for the scheduling delay.

¶11 The District Court also denied Lindsay's motion to interview the children or allow them to testify as witnesses, based on the court's concern that added participation of the children in their parents' custody dispute might be detrimental to their mental health given the past history of the case; the primary issue of alleged parental alienation by Lindsay; and the potential emotional and psychological harm to the children that could result from their further involvement in the litigation.

¶12 As to Lindsay's petition to amend the Parenting Plan, the District Court held that Lindsay had failed to show a substantial change in circumstances necessitating the requested amendment. Section 40-4-219, MCA. The court further held that the best

interests of the children under § 40-4-212, MCA, would not be served by granting Lindsay's requested modification to the Parenting Plan. The District Court affirmed its May 2019 ex parte order granting Stevan's motion to amend the Parenting Plan, by ordering that the October 2017 Parenting Plan be revised to reflect the terms of the May 2019 ex parte order.

¶13 Lindsay appeals the District Court's November 2019 order, asserting three errors which she argues warrant reversal: (1) that the District Court committed reversible error when it failed to abide by the 21-day hearing requirement as prescribed in § 40-4-220(2)(b), MCA; (2) that the District Court committed clear error when it determined that Lindsay had subjected the children to parental alienation and should be restricted to professionally supervised parenting time; and (3) that the District Court deprived Lindsay of due process of law by preventing her from calling the children as witnesses at trial. We address each issue in turn.

¶14 The first issue raised on appeal is whether the District Court committed reversible error when it failed to hold a show cause hearing on its ex parte order within the 21-day timeframe as required by § 40-4-220(2)(b), MCA. Lindsay argues that § 40-4-220(2)(b), MCA, imposes "a basic jurisdictional requirement," and the District Court exceeded its jurisdiction when it held a hearing on Stevan's ex parte motion outside of the 21-day statutory hearing requirement. Lindsay contends that the court committed structural error because she was "depriv[ed] . . . of all reasonable contact" with her children in the interim between the issuance of the ex parte order and the August 12, 2019 hearing.

8

¶15 This Court will not reverse a district court's ruling by reason of an error that would have no significant impact upon the result. *In re H.T.*, 2015 MT 41, ¶ 10, 378 Mont. 206, 343 P.3d 159 (citing *In re J.C.*, 2008 MT 127, ¶ 43, 343 Mont. 30, 183 P.3d 22). "[I]f there is no showing of substantial injustice, the error is harmless." *In re A.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427. Where, as here, a district court engages in a discretionary action which cannot be accurately characterized as a finding of fact or conclusion of law, we review the district court's decision to determine whether the court abused its discretion. *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994).

¶16 We have consistently held that a district court may protect a child's best interests despite procedural errors. *In re F.H.*, 266 Mont. at 39, 878 P.2d at 892. Although Lindsay argues that the District Court's failure to hold a show cause hearing constitutes a jurisdictional question warranting plain error review, our reading of the statute reveals that the 21-day hearing provision is a statutorily imposed procedural requirement. Roberts's report to the District Court voiced concerns about the children's mental and physical welfare should Lindsay be allowed continued unsupervised visits with the children. These alarming revelations put the District Court on alert and triggered the court's duty to protect the children and ensure that all actions were taken in their best interests. Here, the court carefully balanced the procedural statutory requirements against the children's best interests and ultimately decided to protect the children. The District Court's inability to hold a hearing within 21 days of issuing its ex parte order does not amount to an abuse of discretion warranting reversal.

9

¶17 Lindsay argues to this Court that prospective harm to her rights *could have* resulted from the District Court's failure to hold a hearing within 21 days; however, she fails to show how the error caused her concrete substantial injustice.[1] The fact that Lindsay was permitted to see the children—albeit under professionally supervised circumstances—is evidence that the court's failure to hold a hearing within the requisite time frame did not result in substantial injustice to Lindsay. The District Court did not abuse its discretion when it concluded that the children's best interests precluded granting Lindsay's motion to quash the ex parte order in the interim between the 21-day hearing deadline and the August 12, 2019 hearing.

¶18 Lindsay next argues that the District Court committed clear error when it determined that she was "guilty of parental alienation" and should be restricted to professionally supervised parenting time. Lindsay asserts that "there was absolutely no evidence adduced at trial about any act, speech or conduct by Lindsay that supports the theory" of parental alienation. We disagree. There is ample evidence in the record to support the District Court's findings and conclusions that the children suffered from parental alienation attributable to Lindsay.

¶19 This Court reviews a district court's findings of fact supporting a parenting plan to determine whether they are clearly erroneous. *In re C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the

---

[1] For instance, Lindsay's brief to this Court states that the District Court's "delay could easily have caused irreparable harm to Lindsay and it certainly took away valuable time she could have spent with her children."

evidence; or if our review of the record convinces us that a mistake has been made. *In re C.J.*, ¶ 12.

¶20 Essentially, Lindsay asks this Court to review the same evidence presented to the District Court and reach different conclusions on Lindsay's role in the children's psychological dysfunction and parental alienation. Lindsay disagrees with the District Court's use of the children's diagnoses and recommendations made by the children's counselors as evidence to be weighed according to the best interest factors in § 40-4-212(1), MCA.

¶21 The District Court's October 2017 order and Parenting Plan found that the children were bonded and had good relationships with both Lindsay and Stevan. A few months later, in May 2018, the children's mental health had deteriorated to the point that their counselors expressed concern that more time with Lindsay would result in long term negative impacts to the children's mental health, including maladaptive coping and depression. The children's counselors observed patterns of behavior suggesting parental alienation instigated by Lindsay with Stevan as the target, and attributed the dramatic change in the children's mental health to Lindsay's behavior. The District Court applied these findings to the best interest factors in § 40-4-212(1), MCA, to determine that the children's interests would be best served by remaining in Columbus with Stevan, where they have a strong support system. According to the District Court, Stevan "is most likely to facilitate Lindsay's contact with the children and follow the recommendations of the children's counselors while Lindsay has shown a consistent effort to frustrate and

11

undermine Stev[an]'s relationship with the children and does not support the children's counseling."

¶22 We hold that the District Court did not commit clear error in making these findings, as the record shows that Lindsay continues to refuse to acknowledge her role in the children's mental health issues, and does not seem to understand the impact of her behavior on the children's long term development. The court's findings on Lindsay's role in the children's parental alienation diagnoses were supported by substantial evidence, accurately apprehended by the District Court.

¶23 Lindsay's final argument on appeal concerns the District Court's denial of her motion to interview the children or to allow the children to testify as witnesses. Lindsay asserts that the court's denial of her motion deprived her of due process of law.

¶24 Whether a person has been denied his or her right to due process is a question of constitutional law of which our review is plenary. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408. We review evidentiary rulings to determine whether the district court abused its discretion. *State v. Enright*, 2000 MT 372, ¶ 21, 303 Mont. 457, 16 P.3d 366. The District Court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned. *Enright*, ¶ 21.

¶25 Lindsay argues that this Court's case law regarding due process in termination proceedings is applicable in the present circumstances. *See In re A.S.*, ¶ 12. *In re A.S.* involved a petition by the State to terminate the parental rights of a mother who had repeatedly failed to comply with her treatment plan. Under such circumstances, we

12

held that "when the State seeks to terminate a parent's liberty interest in the care and custody of his or her child, due process requires that the parent not be placed at an unfair disadvantage during the termination proceedings." *In re A.S.*, ¶ 12. "Accordingly, we have held that fundamental fairness requires that a parent be represented by counsel at proceedings to terminate parental rights." *In re A.S.*, ¶ 12.

¶26 Lindsay contends that application of due process is appropriate in the present case. She characterizes the District Court's decision to disallow the children's testimony "threatened [Lindsay] with termination" of her parental rights. She asserts that the threat of termination of her parental rights "is the result of the ruling in the present case although it did not arise in the context of a child protective services matter." Lindsay argues that the District Court's denial of her motion to interview the children or to permit them to testify violated due process by infringing on her right to call witnesses on her own behalf. We disagree. The facts of *In re A.S.* are notably dissimilar to the facts here. Lindsay's right to parent her children was not "threatened" or "terminated" as a result of the District Court's evidentiary ruling on the permissibility of the children's testimony, and therefore her due process rights were not implicated in any way in the proceedings below. As such, we review the District Court's denial of Lindsay's motion to interview the children or permit them to testify for an abuse of discretion.

¶27 Section 40-4-212(1), MCA, provides that a court must determine a parenting plan "in accordance with the best interest of the child[ren]," and lists several factors relevant to the court's determination. One such factor is "the wishes of the child." Section 40-4-212(1)(b), MCA. To determine the child's wishes with regards to the

13

parenting plan, § 40-4-214, MCA, permits the court to interview the child in chambers or to seek the advice of professional personnel. "The statute does not require the court to interview the children directly. . . . It permits a court to instead rely on the evaluation of a professional counselor." *Anderson v. Anderson*, 2014 MT 111, ¶ 17, 374 Mont. 526, 323 P.3d 895 (internal citations omitted). This Court has explained that § 40-4-214, MCA, is a statutory exception to the rule prohibiting hearsay. *Anderson*, ¶ 17 (citing *Marriage of Drake*, 2002 MT 127, ¶¶ 16-18, 310 Mont. 114, 49 P.3d 38; M. R. Evid. 802).

¶28 Although consideration of the children's wishes is a factor to be considered under § 40-4-212(1), MCA, the District Court is not required to interview the children, nor is it required to follow their wishes. *See Marriage of Williams*, ¶ 20. Child witnesses need protection against the potential emotional and psychological injuries that may occur with regular litigation procedures. *Henricksen v. State*, 2004 MT 20, ¶ 46, 319 Mont. 307, 84 P.3d 38. At the August 2019 hearing, substantial testimony was presented regarding the current and past wishes of the children and their relationships with Lindsay and Stevan. The court stated its concerns that added participation of the children in their parents' custody dispute might be detrimental to their mental health, given the past history of the case; the primary issue of alleged parental alienation by Lindsay; and the potential emotional and psychological harm to the children that could result from their further involvement in the litigation. It was within the District Court's discretion to hold that the best interests of the children and potential harm to their mental well-being outweighed interviewing the children or permitting them to testify as to their preferences,

14

given the court's findings on the children's mental health, parental alienation, and the high level of conflict in the case. Therefore, the District Court did not abuse its discretion in declining to interview the children or to permit them to testify in court as to their wishes.

¶29 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶30 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE