No. 01-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 127

IN RE THE MARRIAGE OF
MARVIN PHILLIP DRAKE

        Petitioner/Respondent,

   and

JESSICA SUE DRAKE,
n/k/a JESSICA SUE KOTERBA
        Respondent/Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Charles Frederick Unmack, Hubble, Ridgeway, Unmack & Westveer,
Stanford, Montana

       For Respondent:

           John Bobinski, Helena, Montana

Submitted on Briefs: October 18, 2001

Decided:   June 13, 2002

Filed:

_____
                       Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Marvin Drake (Marvin) filed a motion in the First Judicial District Court in Lewis and Clark County, to modify the arrangement for residential custody of his two children, Gavin and Danielle. The court held a hearing and granted his request in April 2001. Jessica Drake, n/k/a Jessica Koterba (Jessica), the children's mother, filed a timely appeal. We affirm the order of the District Court.

## ISSUES

¶2     The primary issue before this Court is whether the District Court erred in granting Marvin's motion to modify the parenting plan. In that connection, we have been asked to decide whether the District Court improperly allowed hearsay evidence to be introduced during the hearing, and whether the District Court abused its discretion by failing to specifically refer to a Department of Public Health and Human Services (DPHHS) Family and Child Services investigation report in its Findings of Fact, Conclusions of Law and Order.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Upon Marvin and Jessica's divorce in October 1995, the parents were granted joint legal custody of their two young children, Gavin, then 6 years old, and Danielle, then 3. Additionally, Jessica was designated as primary residential custodian and Marvin was provided with visitation rights. After the divorce, both parents continued living in Helena and Marvin consistently exercised his rights to spend time with the children. Approximately three years later, Jessica told Marvin she intended to move to Lewistown to pursue a nursing degree. Marvin sought to modify residential custody to keep the children in Helena but his modification request was denied.

2

¶4 Jessica, Anthony, her then-twelve year old son from a previous relationship, Gavin and Danielle moved to Lewistown in mid-December 1998. In August 1998, Jessica married Scott Koterba, her present husband. Scott has two children from a previous marriage who visit Scott, Jessica and the other children every other weekend.

¶5 In June 1999, approximately six months after moving to Lewistown and just before Gavin and Danielle were leaving to spend the summer in Helena with Marvin in accordance with the parenting plan, Jessica took Gavin to a Lewistown physician, Dr. Berberet. She wanted him to be tested for Attention Deficit/Hyperactivity Disorder (AD/HD) because Gavin was having problems in school. Dr. Berberet recommended that a complete evaluation be conducted.

¶6 The complete evaluation was conducted on September 16, 1999. Dr. Berberet diagnosed Gavin with AD/HD and prescribed medication to be taken on a daily basis through the school week. Marvin and Jessica were given the discretion based on Gavin's behavior whether to administer the medication on the weekends. Dr. Berberet subsequently saw Gavin in December 1999, March and October 2000 and March 2001. Marvin claims that he did not discover that Gavin had been diagnosed with AD/HD or medicated for it until December 1999. Jessica disputes this.

¶7 Simultaneously, at Marvin's direction, both children started counseling in Helena as well. In late July 1999, Marvin took Gavin, then 10, and Danielle, then 7, to Dr. Burns, a licensed clinical psychologist in Helena. Marvin maintains that at that time he did not know that Gavin had seen Dr. Berberet. Marvin **asked Dr. Burns to meet with the children because Marvin was concerned that Gavin was possibly suffering from Attention Deficit Disorder (ADD) and Danielle might be experiencing depression or some other type of mental health disorder.** This first visit was merely a consultation, and Dr. Burns did not perform any tests

3

or form a diagnosis.

¶8     Dr. Burns subsequently met with the children in December 1999 and February 2000. The December session **was another counseling session and no psychological testing was performed. During the February 2000 session with Dr. Burns, however, both children underwent extensive psychological tests. Subsequently Dr. Burns diagnosed Danielle with adjustment disorder with anxiety and underlying emotional distress, and Gavin with adjustment disorder with mixed anxiety and depressed mood. Dr. Burns was unable to conclusively diagnose Gavin with ADD or AD/HD, but he could not rule it out. Dr. Burns concluded that there was an emotional and situational element to Gavin's behavior problems because his behavior appeared to be more extreme and disruptive when he was in Lewistown with Jessica than it was when he was in Helena with Marvin. Had Gavin's problem been purely biological as a result of ADD, Dr. Burns believed he would have displayed similar behavior problems whether at Marvin's or at Jessica's.**

¶9     Sometime in the spring of 2000, at approximately the time the children stopped seeing Dr. Burns, they began a series of counseling sessions with Maggie Moffatt, a licensed clinical professional counselor who was on contract with the school Gavin and Danielle attended. The children had been referred to her by the school counselor who indicated that Gavin was not focusing well or paying attention in class and he was occasionally aggressive with some other children. Also, Danielle was having trouble taking direction and was being "willful." Ms. Moffatt concluded that the children were having adjustment issues with Jessica's marriage. The children  met with Ms.

4

Moffatt every other week for approximately one to one-and-one-half hours. Jessica, Scott, and Jessica's son from a previous relationship, Anthony, also participated in some of these sessions. Ms. Moffatt testified that during these sessions, the children occasionally expressed a preference for where they wished to live. She stated that "the majority" of the time Gavin said he wanted to live with Marvin but Danielle vacillated in her preference between her parents. The sessions were discontinued in early June when the children left to spend the summer in Helena with Marvin. Ms. Moffatt stated that she believed "major strides" had been made during the three months of family counseling.

¶10 In November 2000, Marvin again requested modification of the residential custody arrangement. This action was prompted in part by Marvin learning that Jessica was attending some of her nursing classes in Havre rather than Lewistown. (Jessica had testified in the December 1998 hearing on Marvin's first request for modification that all of her classes would be held in Lewistown.) When Jessica attended classes in Havre, the children were frequently left in the care of others. On several occasions they were required to arrive at day care before 6:00 a.m. or remain at day care until 10 or 11 p.m. and spend some nights with the day care provider. Additionally, Marvin perceived that his children continued to experience difficulty adjusting to Jessica's marriage to Scott.

## STANDARD OF REVIEW

¶11 We review a district court's findings related to custody or visitation modification to determine whether those findings are clearly erroneous. *In re Marriage of Nevin* (1997), 284 Mont. 468, 472-73, 945 P.2d 58, 61 (citing *In re Marriage of Elser* (1995), 271 Mont. 265, 270, 895 P.2d 619, 622, *overruled on other grounds by Porter v. Galarneau* (1996), 275 Mont. 174, 911 P.2d

1143). In *Elser,* we said that "findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." *Elser*, 271 Mont. at 270, 895 P.2d at 622. If the findings on which its decision are based are not clearly erroneous, this Court will reverse a district court's decision regarding custody modification or visitation only when an abuse of discretion is demonstrated. *Elser*, 271 Mont. at 270, 895 P.2d at 622 (citation omitted).

## DISCUSSION

¶12    A District Court is authorized to modify a parenting plan if it determines that the child's circumstances have changed since the prior plan was entered and that the modification serves the best interests of the child.  Section 40-4-219, MCA.  When facing the unenviable and frequently difficult task of deciding what is in a child's best interest, the district court is guided by § 40-4-212, MCA, which outlines several relevant factors to be considered, including, among others, the positions of the parents vis-à-vis the modification, the mental and physical health of the child, and the age and wishes of the child.

¶13    During trial, the District Court gave consideration to statements that the children had made to Dr. Burns during his sessions with them.  Jessica objected on the grounds that such statements by the children constituted inadmissible hearsay.  The District Court overruled her objection.

6

**¶14** During the course of the three sessions with Dr. Burns, the children indicated on multiple occasions that they were unhappy with their living situation in Lewistown and **wished to live with their father in Helena. Dr. Burns included these statements in his reports, which were admitted into evidence at the hearing, and repeated them while testifying at the hearing. Dr. Burns also testified at the hearing about the various tests Gavin and Danielle completed during his evaluation of them. He explained how each child performed on these tests and his interpretation of their performance. Dr. Burns concluded not only from their specific statements but from the information obtained during all three visits that the children were unhappy with their Lewistown living arrangement, that they did not want to be separated from one another, and that they wanted to live with their father. He also concluded that it was very important to Gavin that his desire to live with his father be heavily considered by his parents and anyone else making a custody decision.**

**¶15** "Hearsay is a statement, including both oral assertions and nonverbal conduct intended as an assertion, made by a person not currently testifying and offered in evidence to prove the truth of the matter asserted." *In the Matter of A.N. and C.N.*, 2000 MT 35, ¶ 53, 298 Mont. 237, ¶ 53. Montana Rule of Evidence 802 states that "[h]earsay is not admissible except as otherwise provided by statute, [the Montana evidence] rules, or other rules applicable in the courts of this state."

**¶16** Jessica has several complaints regarding the District Court's acceptance of Dr. Burns' testimony. She argues that this Court has declined to extend the Montana Rule of Evidence 803(4) exception to statements made by a child to a counselor, reasoning that "the circumstantial guarantee

7

of trustworthiness underlying the medical treatment exception is 'less forceful' in cases involving children . . . ." See *State v. Henderson* (1994), 265 Mont. 454, 462, 877 P.2d 1013, 1018. **Moreover, Jessica maintains that the District Court could have requested an <u>independent</u> evaluation to be performed under § 40-4-214(2), MCA, after which hearsay statements made by the children during the course of the evaluation would be admissible. See *In Re Marriage of Bukacek* (1995), 274 Mont. 98, 907 P.2d 931. She further argues that because the District Court refused to allow her to state what the children had told her about their residential preferences, ruling that such statements were inadmissible hearsay, the same rationale should be applied to their statements to Dr. Burns.**

¶17    It should be noted **that under § 40-4-214(1), MCA, the court could have interviewed the children to determine their wishes. Jessica, however, specifically objected to the children being interviewed by the court and the court honored her request not to interview Gavin and Danielle.**

¶18    We need not determine whether Dr. Burns' testimony was admissible under Rule 803(4) because we conclude that it qualifies as professional advice available to the court under § 40-4-214(2), MCA. We have held that "[c]hildren's preferences for custody are a factor which should be considered by the district court (citation omitted). However, the court need not interview the children to discern their preferences (citation omitted). It may rely on the evaluation of a professional counselor." *Bukacek*, 274 Mont. at 105, 907 P.2d at 935. **In *Bukacek*, the court appointed a professional counselor to interview the children. The counselor then**

8

**set forth his opinions about the children's preferences in his custody evaluation report which the district court considered in its order.** *Bukacek*, **274 Mont. at 105-06, 907 P.2d at 935-36. The** *Bukacek* **court relied upon** *In Re Marriage of Bolt* **(1993), 259 Mont. 54, 58, 854 P.2d 322, 324, where we stated "[t]he wishes of the children were considered by the court through counseling by a family counselor . . . who spent time with the children in order to determine the cause of the problems they were experiencing and how the children could be helped."** *Bolt*, **259 Mont. at 58, 854 P.2d at 324. In** *Bolt*, **the Court did not specify whether the counselor who provided professional advice to the court was appointed or had been retained by one of the parties at some previous time.**

¶19     Special appointment of an independent professional counselor is not necessary in all circumstances. In this case, appointment was unnecessary because the children had already undergone extensive counseling and evaluation by a medical doctor as well as by one counselor hired by Jessica and one counselor hired by Marvin. The District Court admitted the entire testimony of all professionals who had counseled these children. It then weighed that testimony and rendered its decision. We conclude that the testimony of all the counselors was admissible under § 40-4-214(2), MCA.

¶**20**     Moreover, Jessica has not challenged Dr. Burns' qualifications but rather argues that because he was hired by Marvin, his evaluation was not independent. This perceived lack of independence is a factor the District Court could have considered when assessing the credibility of Dr. Burns and weighing his evidence. It would not have rendered the evidence inadmissible. We have held on numerous occasions that the district court is in a superior position to weigh evidence and the

9

credibility of witnesses, and therefore we will not overturn a district court in a child custody matter unless we determine that there has been a clear abuse of discretion. *Bukacek*, 274 Mont. at 105, 907 P.2d at 935; *Bolt*, 259 Mont. at 58, 854 P.2d at 324. Nor will we substitute our judgment for that of the fact finder as to the weight of evidence and credibility of witnesses. *Adoption of J.M.G.* (1987), 226 Mont. 525, 528, 736 P.2d 967, 969.

**¶21 Jessica also argues that the District Court failed to review the records from DPHHS Family and Child Services requested by the court. These records pertained to an April, 1999 investigation of Jessica, Jessica's then-fiancé Scott Koterba, and the children conducted in Lewistown. Because the court did not mention these records in its Findings of Fact, Conclusions of Law and Order, Jessica asserts that the court failed to review them and such failure was an abuse of discretion. She cites *In Re Marriage of Abrahamson* (1996), 278 Mont. 336, 341, 924 P.2d 1334, 1337, in which this Court held that if a district court orders a custody evaluation or investigation, but this Court is "not able to determine if the District Court even considered the report," we may conclude that the District Court abused it discretion.**

¶22 However, *Abrahamson* is not applicable in this case for two reasons. First, these records were not generated as a result of a court-ordered custody evaluation or investigation. Second, the District Court judge stated during the hearing that he had reviewed the material when it arrived.

¶23 Furthermore, the district court is not required to make specific findings on every fact presented or every piece of evidence offered. It need only include "the essential and determining factors upon which [its] conclusions rest." *Moseman v. Moseman* (1992), 253 Mont. 28, 31, 830

P.2d 1304, 1306. This rule applies not only to the DPHHS records but also to Jessica's complaint that the District Court failed to make specific findings of uncontradicted facts.

¶24    During the hearing, the District Court heard a great deal of testimony regarding changes or events in Gavin's and Danielle's lives since their move to Lewistown. Importantly, Jessica testified that the children were having adjustment problems related to her marriage to Scott and that she told Gavin that he could live with his father when he turned 12 years old (Gavin turned 12 two months after the April 2001 hearing). Also, **a deputy juvenile probation officer testified about Gavin's involvement in vandalizing a house with some other Lewistown boys and the resulting charge of criminal mischief and Gavin's one year probation. Gavin's fifth grade teacher testified that Gavin had developed the reputation as a third-grade "troublemaker" during his first year at his Lewistown school but by the mid-fourth grade appeared to be doing better, and that Gavin's medication allowed him to be more attentive and less disruptive.**

¶25    It is significant that the same District Court judge presided over the dissolution of Marvin and Jessica's marriage and entered the first parenting plan in 1995, conducted the hearing when Marvin sought custody modification in 1998, and then presided over this modification request and hearing in 2001. The District Court therefore had a working familiarity with this family upon which it could critically weigh evidence and decide what was in the best interests of the children. We conclude that the District Court's Findings of Fact, Conclusions of Law and Order were supported by substantial evidence and, therefore, were not clearly erroneous. The District Court did not misapprehend the effect of the evidence, nor does this Court's review of the record convince us that a mistake has been made. **We affirm.**

/S/ PATRICIA COTTER

We Concur:


/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART