No. 01-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 204

IN RE THE MARRIAGE OF

ROM DONALD HEDGES,

        Petitioner/Appellant,

   and

KRISTI JO HEDGES,

        Respondent/Respondent/Cross-Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                In and for the County of Sheridan,
                The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin J. Chapman, Chapman Law Office, Williston, North Dakota

    For Respondent:

        Phillip N. Carter, Sidney, Montana

Submitted on Briefs: January 31, 2002

Decided: September 10, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     The Fifteenth Judicial District Court in Sheridan County, Montana, dissolved Rom and Kristi Hedges' marriage, valued and distributed the couple's property and entered a parenting plan governing custody of the couple's only child. Rom and Kristi each appeal from various aspects of the District Court's ruling. We affirm in part and reverse and remand in part.

## ISSUES

¶2     The parties took exception to several aspects of the District Court's ruling. A restatement of Rom's issues is:

    1.     Did the District Court err in adopting the Final Parenting Plan?

    2.     Did the District Court err in its ordered property distribution?

    3.     Did the District Court err in ordering Rom to pay post-judgment interest?

¶3     Kristi's issues as cross-appellant are:

    1.     Did the District Court err in characterizing the year 2000 crop as Rom's income rather than including it in the marital estate?

    2.     Did the District Court err when it calculated Rom's child support obligation?

    3.     Did the District Court err when it awarded 960 acres of pasture land to Rom instead of Kristi?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Rom Donald Hedges and Kristi Carol Hedges were married on October 10, 1992. The couple ranched and farmed in Antelope, Montana, during their marriage. On November 7, 1997, their only child, Risa Carol Hedges, was born. Rom and Kristi separated on or about April 30, 1999. Rom filed a Petition for Dissolution of Marriage and a Motion for Interim Parenting Plan on May 5,

2

1999. In the interim plan, Rom requested that Risa reside with him on the family farm for a majority of the time. Kristi contested the motion and a hearing was held on June 7, 1999, before District Court Judge David Cybulski.

¶5 On June 18, 1999, Judge Cybulski entered an interim parenting plan under which Risa's primary residence was with Rom but she spent at least three days per week with Kristi, on Kristi's days off from her job with the postal service. In March 2000, Kristi moved the court to modify the interim parenting plan. A hearing was held on this motion on May 10, 2000. Judge Cybulski had recused himself in August 1999, and therefore Judge Richard Phillips presided. After hearing testimony from the parties, various friends and relatives, and a clinical psychologist who evaluated Kristi and Risa, the court denied Kristi's motion to modify the parenting plan by Order dated May 24, 2000, concluding that no substantial change of circumstances had occurred and that a change of custody was not required for Risa's best interests.

¶6 In August 2000, a two-day trial was held before Judge Phillips. During the trial, the court instructed the parties that it would hear only post-May 10, 2000 evidence pertaining to parenting issues and custody, as it was already aware of relevant custodial information up through the May 10, 2000 hearing. Following trial, the court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage (Decree) on November 2, 2000. The Decree included a Final Parenting Plan (the FPP or Plan) and a distribution of marital property.

¶7 The FPP departed substantially from the interim parenting plan, and established that Risa would henceforth reside with Kristi instead of Rom. The District Court claimed, however, that the FPP would "provide for continuing shared time between the parties as evenly as possible." To achieve this "evenly shared time," the Plan provided that the parents should alternate weekends with

3

Risa, and that Kristi should allow Risa to spend three days and one night at Rom's house during each week that Risa would not be spending the following weekend with Rom. On the weeks leading to the weekends that Risa would spend with Rom, Kristi was to arrange for Risa to spend two days with Rom. For the remainder of those weeks while Kristi was working, Risa would stay with Kristi's family or in day care. The upshot of this rather complicated plan is that Risa spends much more time with her mother than with her father. The FPP also addressed holiday and summer schedules, decision-making issues and general rules applicable to divorced parents jointly raising a child in separate households. The Decree established the amount of monthly child support Rom must pay based upon an estimated annual income of $35,000.

¶8    Rom appeals the residential provisions of the FPP, arguing that no substantial change of circumstances had occurred that warranted departing from the interim parenting plan. Kristi supports the FPP but appeals the amount of child support Rom was assigned, arguing that the District Court underestimated Rom's income.

¶9    Also during the August trial, the court heard substantial testimony regarding the value, ownership and use of articles of personal property and parcels of real property. Additionally, the District Court took testimony on the income and debt of both parties. From this testimony, the District Court attributed value to these items of property and distributed them between Rom and Kristi. The parties hotly disputed to whom a 960-acre parcel of pasture land should be allocated. After attempting a "Solomon-like" division in the court's original Decree, Judge Phillips reversed himself in an amended Order and granted the entire parcel to Rom. Kristi appeals this decision.

¶10    Additionally, in an attempt to equalize the estate between the parties, the court ordered Rom to pay Kristi $32,000, plus 10% post-judgment interest, before September 30, 2001, and an

4

additional $19,500, plus 10% post-judgment interest over a period of three years. Rom appeals both the amount to be paid and the imposition of post-judgment interest.

¶11 Lastly, Kristi appeals the District Court's decision to exclude the value of the year 2000 crop of grain, hay, calves and lambs from the marital estate. The District Court concluded that farm and ranch production for the year 2000 minus production costs for that year constituted Rom's income and should not be included in the marital estate. Kristi disagreed and argued that these items were acquired during the marriage and should be part of the marital estate. Moreover, she argued that should this Court determine that the 2000 crop was Rom's income, then the District Court underestimated the income amount and therefore miscalculated Rom's monthly child support obligation.

### STANDARD OF REVIEW

¶12 We review a district court's findings related to custody or visitation modification to determine whether those findings are clearly erroneous. *In re Marriage of Drake,* 2002 MT 127, 310 Mont. 114, 49 P.3d 38 (citing *In re Marriage of Elser* (1995), 271 Mont. 265, 270, 895 P.2d 619, 622, overruled on other grounds by *Porter v. Galarneau* (1996), 275 Mont. 174, 911 P.2d 1143). In *Elser*, we said that "[f]indings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made." *Elser,* 271 Mont. at 270, 895 P.2d at 622. If the findings on which its decision are based are not clearly erroneous, this Court will reverse a district court's decision regarding custody modification or visitation only when an abuse of discretion is demonstrated. *Elser*, 271 Mont. at 270, 895 P.2d at 622 (citation omitted).

¶13 We review a district court's division of marital property to determine whether the findings on

5

which it relied are clearly erroneous. *In re Marriage of DeBuff,* 2002 MT 159, 310 Mont. 382, 2002 Mont. LEXIS 318 (citing *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.) If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion. *DeBuff*, ¶ 14.

¶14    A district court's award of post-judgment interest is a conclusion of law which we review de novo. *DeBuff*, ¶ 15 (citing *Tipp v. Skjelset*, 1998 MT 263, ¶ 11, 291 Mont. 288, ¶ 11, 967 P.2d 787, ¶ 11).

## DISCUSSION

¶15    The first issue we address is whether the District Court erred in its adoption of the FPP.

¶16     Rom appeals the terms of the FPP and argues that the District Court erroneously adopted an FPP that was significantly different from the interim parenting plan without a showing of a substantial change in circumstances as required by § 40-4-219, MCA.  Rom also argues that the FPP adopted by the court is much more one-sided, in Kristi's favor, than either parties' proposed parenting plan.  Rom maintains that the FPP was not based upon substantial evidence and was therefore clearly erroneous.

¶17    We begin our analysis by recognizing the difficult position in which district courts are placed when presented with contentious marriage dissolution and child custody cases.  We reiterate our firm belief that the trial court is in a better position than this Court to resolve child custody issues. We therefore presume the district court's ruling is correct and we will uphold it unless the court's findings of fact are clearly erroneous or a clear abuse of discretion is shown.  See *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 22, 307 Mont. 60, ¶ 22, 36 P.3d 874, ¶ 22 (citation omitted).

¶18     Section 40-4-219, MCA, authorizes a district court to modify a parenting plan if it

6

determines that the child's circumstances have changed since the prior plan was entered <u>and</u> that the modification serves the best interests of the child. In defining the best interests of the child, courts are guided by § 40-4-212, MCA, which outlines several relevant factors to be considered. Rom argues that under § 40-4-219, MCA, in order to depart from the interim parenting plan, the District Court had to find a substantial change of circumstances and that the change of custodial arrangements was in Risa's best interests. Rom's reliance on § 40-4-219, MCA, is misplaced, however. This Court has held that § 40-4-219, MCA, authorizing courts to modify parenting plans, does not apply to modifications of temporary or interim parenting plans but, rather, to previously issued <u>final</u> parenting plans. The correct standard to be applied when first adopting a final parenting plan, even one that departs from an interim parenting plan, is whether the FPP is in the "best interest of the child." Section 40-4-212, MCA. See *In re Marriage of Kovash* (1993), 260 Mont. 44, 50, 858 P.2d 351, 355 ("If changed circumstances are required to be proven before modifying temporary custody orders, parents would be forced to litigate temporary custody. This result would be contrary to the purpose of the statute.") See also *In re Marriage of Allen* (1989), 237 Mont. 64, 771 P.2d 578.

¶19    Having said that, courts must nonetheless determine what is in the best interests of the child based upon the evidence presented. Here, both Rom and Kristi proposed parenting plans that provided for a much more equal division of time with Risa than the court's FPP provided. Moreover, the court's FPP was, by its terms, premised upon the previous interim plan together with that new information which became available between May 10, 2002 and the August, 2002 hearing-- and very little additional information was submitted for this window of time. We see nothing in the evidence presented that supports an FPP so fundamentally different from the interim plan and the proposed plans of the parties. More to the point, nothing in the record demonstrates that the court's

7

radical departure from the previous plan and the parties' proposed plans was in Risa's best interests. We therefore conclude that the court's FPP is not supported by substantial evidence and must be reversed. We remand this matter for the adoption of an FPP that allows Risa to spend approximately equal time with her parents. The adoption of a new FPP will also require that the District Court recalculate the child support obligations of the parties.

¶20 The next issue we address is whether the District Court erred in its property distribution.

¶21 We have ruled on numerous occasions that "the determination of property valuation is a factual issue which is within the province of the trial court to decide. When reviewing findings of fact, this Court is precluded from substituting its judgment for that of the trier of fact, and cannot set aside the findings of a court sitting without a jury unless the findings are 'clearly erroneous'." *In re Marriage of Meeks* (1996), 276 Mont. 237, 247-48, 915 P.2d 831, 838. The district court has the discretion to adopt any reasonable valuation of property supported by the record. *Siefke v. Siefke*, 2000 MT 281, ¶ 20, 302 Mont. 167, ¶ 20, 13 P.3d 937, ¶ 20.

¶22 Rom argues that the District Court failed to take into account the factors stated in § 40-4-202(1), MCA, when dividing the marital estate. We disagree. During the trial, the parties submitted to the District Court a list of items included in the marital estate. Additionally, the parties attributed values to these items. Not surprisingly, the values submitted by the parties were not identical. We have repeatedly held that the trial court sits in the best position to judge the credibility of the testimony proffered by parties and witnesses and that we will defer to its resolution of any conflicting evidence. *In re Marriage of Rolf*, 2000 MT 361, ¶ 52, 303 Mont. 349, ¶ 52, 16 P.3d 345, ¶ 52 (citations omitted). Furthermore, the District Court has broad discretion in determining the value of the property. "As long as the valuation is reasonable in light of the evidence submitted, we

8

will not disturb the finding on appeal." *Stoneman v. Drollinger*, 2000 MT 274, ¶ 32, 302 Mont. 107, ¶ 32, 14 P.3d 12, ¶ 32. Our review of the record reveals that the District Court properly considered the statutory requirements under § 40-4-202, MCA, and conscientiously weighed the evidence presented. We conclude there was sufficient evidence to support the District Court's valuation of the property and that such valuations were within the range of values presented. Moreover, we will not disturb the District Court's decision to distribute the property "equally." We therefore affirm on this issue.

¶23 We next review the District Court's decision to require Rom to pay post-judgment interest to Kristi.

¶24 Section 25-9-205, MCA, provides that interest is payable on judgments recovered in Montana's courts at the rate of 10% per annum. This Court has held on several occasions that "when the marital dissolution decree is silent as to interest, such interest is automatically collectible by the judgment creditor spouse on past due payments for support money or maintenance, the same as any other money judgment under section 25-9-205, MCA." *Williams v. Budke* (1980), 186 Mont. 71, 79, 606 P.2d 515, 519; *In re Marriage of Gibson* (1983), 206 Mont. 460, 671 P.2d 629. In this case, the District Court included the statutorily allowed interest in the dissolution decree. This was within the court's discretion. We affirm.

¶25 Kristi cross-appeals to this Court on several issues. The first issue we consider is whether the District Court erred when it failed to include in the marital estate the year 2000 grain, hay, calf and lamb crops. Rather than denominate these items as marital property, the District Court determined that these crops constituted income for Rom for the year 2000. This was an equitable decision and one within the District Court's broad discretion, given that Rom had no "income"

9

outside of his farming operation to claim. Kristi argues that Rom referred to the year 2000 crops as "assets" and therefore, the court should have included them as marital assets. However, the District Court is not compelled to adopt the position of either party if equity or law dictates differently.

¶26 The District Court is vested with broad discretion to distribute the marital estate in a manner that is equitable to both parties, under the circumstances of each case. *In re the Marriage of Lee* (1997), 282 Mont. 410, 421, 938 P.2d 650, 657. Moreover, in light of the fact that the consideration of these items as income will have an impact on the court's calculation of child support to the benefit of Kristi and Risa (see below), we conclude that this decision of the District Court was an equitable one. We affirm the District Court's finding.

¶27 Kristi also appeals the District Court's calculation of Rom's monthly child support obligation. Kristi argues that the District Court miscalculated Rom's annual income and that the court used the incorrect number of days that Risa would be spending with Rom during the year. As a result of this Court reversing and remanding the FPP to the District Court, the District Court must recalculate monthly child support obligations based upon the terms of the new FPP. At that time, it must also consider the parties' current financial circumstances in its calculation. Additionally, as the District Court has characterized Rom's income as a specific year's production less production costs and appropriate expenses for that year, it is this figure upon which child support obligations should be calculated. Therefore, we reverse and remand on the issue of child support obligations.

¶28 Lastly, Kristi challenges the District Court's decision to award the 960-acre pasture land to

Rom. As we indicated above, the District Court has broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. *Marriage of Lee*, 282 Mont at 421, 938 P.2d at 657. Our review of the record in the case at bar indicates that the District Court conscientiously considered the evidence presented by the parties and other witnesses, carefully weighed that evidence and reached a supportable conclusion. We will not substitute our judgment for that of the District Court absent a clear error or an abuse of discretion. We find neither. The District Court's decision on this issue is affirmed.

## CONCLUSION

¶29 We reverse the District Court's Final Parenting Plan and remand this matter for an FPP which grants Risa more equal time with both of her parents. Additionally, the District Court is instructed to recalculate monthly child support obligations based upon the terms and conditions of the new FPP and the current financial circumstances of the parties. We affirm the District Court on all other issues.

/S/ PATRICIA COTTER

We Concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

/S/ TED L. MIZNER
District Judge Ted L. Mizner participated in this
matter in place of Chief Justice Karla M. Gray

11