No. 02-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 100

IN RE THE MARRIAGE OF

HAROLD EDWARD NIES,

      Petitioner and Respondent,

  and

SARAH ELIZABETH COOPER,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone Cause No. DR-95-1277,
Honorable Russell C. Fagg, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

      Charles W. Schuyler, Marsillo & Schuyler, Missoula, Montana

      For Respondent:

      Christopher P. Thimsen, Attorney at Law, Billings, Montana

Submitted on Briefs:  June 6, 2002

Decided:  April 24, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     When the marriage of Harold Edward Nies (Harold) and Sarah Elizabeth Cooper (Sarah) was dissolved in December of 1997, Sarah was named primary parent of their infant daughter. In November of 2001, the Thirteenth Judicial District Court, Yellowstone County, granted Harold's motion to modify the parties' parenting plan to make him the primary parent. Sarah appeals. We affirm.

¶2     The issues are:

¶3     1. Did the District Court abuse its discretion when it concluded the daughter's best interest required the court to change custody?

¶4     2. Did the District Court abuse its discretion regarding Sarah's motion *in limine*?

¶5     Harold and Sarah were married in 1995 and separated before their daughter was born the following year. When they separated, Sarah moved back to her own mother's home in Seeley Lake, Montana, and Harold remained in Billings, Montana.

¶6     Harold and Sarah initially were granted joint custody of their daughter, with Sarah as the primary parent and Harold to have visitation on alternating weekends and holidays and for several weeks during each summer. In April of 2001, Harold moved for modification of the parenting plan, claiming Sarah had repeatedly frustrated his visitation. He also complained Sarah had raised allegations that he had sexually abused their daughter and, as a result, he had been allowed only supervised visitation for six months pending investigation by the Department of Public Health and Human Services (DPHHS). At the end of the investigation, the allegations were dismissed as unsubstantiated.

2

¶7 Both parents testified at the hearing on Harold's motion for modification. Harold also presented testimony by Sarah Baxter, a clinical psychologist who had treated the parties' daughter; Mike Sullivan, the director of a sexual abuse treatment program who had evaluated Harold; Maile Ewalt, who had handled the DPHHS investigation of the sexual abuse allegations; and Jackie Adams, who baby-sat the daughter for Harold. In addition to her own testimony, Sarah called a family friend, Gregory McDonald, as a witness. The court also reviewed five depositions: a physician who had examined the daughter for signs of sexual abuse and found nothing; two psychologists who had evaluated and treated the daughter; and two DPHHS social workers who had been involved with the investigation of the allegations of sexual abuse.

¶8 After hearing the testimony and reviewing the depositions, the court granted Harold's motion for modification of the parenting plan. Sarah appeals.

Issue 1

¶9 Did the District Court abuse its discretion when it concluded the daughter's best interest required the court to change custody?

¶10 Our standard of review of findings of fact on the modification of a parenting plan regarding custody and visitation is that the district court's findings will be sustained unless they are clearly erroneous. *In re Marriage of Oehlke,* 2002 MT 79, ¶ 9, 309 Mont. 254, ¶ 9, 46 P.3d 49, ¶ 9. We will reverse a district court's decision regarding modification of custody only where an abuse of discretion is clearly demonstrated. *Marriage of Oehlke*, ¶ 9. Here, Sarah's claims center on the factual determinations made by the District Court.

¶11 Sarah first claims the District Court failed to make specific findings that she frustrated Harold's visitation, in violation of Rule 52(a), M.R.Civ.P. The court's rationale for its decision is set forth in the findings it made in open court. The court stated in its oral findings, "I find specifically that [Sarah] has willfully and consistently refused to allow the child to have contact with dad, and attempted to frustrate or deny contact with dad."

¶12 As Sarah points out, the court then directed Harold's counsel to prepare the written order on its decision:

> I find that [Harold's] testimony about the frustrated visitation, and I guess, [Harold's attorney], I'm going to ask you to put together an order and go through some of those details. I find that they're legitimate and credible about the frustrated visitation in 1998, 1999, 2000, and 2001, whether it's for the excuse of sickness, or lack of availability, or because of the allegation of sexual abuse, or whatever the reasons that were given, I find that they're just not credible and they're not excusable.

Sarah contends this direction from the court required a written order including specific findings concerning frustration of visitation dates, times or places. The written order which the court later entered does not contain such findings of fact.

¶13 Rule 52(a), M.R.Civ.P., provides, "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence[.]" Therefore, to the extent Sarah is complaining about the absence of written findings that she frustrated Harold's visitation, she has established no violation of that Rule. Sarah has cited nothing, and we are aware of nothing, which would require more specificity than is present in the court's oral statement of its findings and its subsequent written order.

¶14 Sarah next asserts that, in making its oral findings, the District Court improperly relied upon its off-the-record notes from the earlier dissolution proceeding. The court stated that it had gone back to its notes from the 1997 dissolution proceedings, in which it had concluded that Harold was a good parent and that Sarah was overly dependent on her family.

¶15 Sarah is correct that the notes to which the District Court referred cannot be used to demonstrate a change in circumstances since that time, as is required for modification of custody pursuant to § 40-4-219(1), MCA. However, the court did not cite those notes as demonstrating a change in circumstances, but rather as a historical background to its findings that Sarah's family exhibited problematic "successive enmeshing" and a "cycle of dependence." We recently deemed it significant, in *In re Marriage of Drake*, 2002 MT 127, ¶ 25, 310 Mont. 114, ¶ 25, 49 P.3d 38, ¶ 25, that the district court had presided in previous proceedings involving a dissolution and parenting plan and "therefore had a working familiarity with this family upon which it could critically weigh evidence and decide what was in the best interests of the children." Given the purpose for which the notes were used in this case, we conclude Sarah has not established that the District Court's reference to its notes from a prior proceeding was improper.

¶16 Sarah states the court erred when it found that her hospitalization and surgeries for a forehead/bone infection were not a factor in loss of visitation. Sarah testified that, beginning in February of 2001, she was hospitalized in Seattle for a life-threatening staph infection that spread to the bone in her forehead, resulting in her temporary inability to accommodate Harold's visitation rights.

¶17 The court's actual finding was that Sarah "has lied about [the daughter] not being available due to sickness" and "whether it's for the excuse of sickness, or lack of availability, or because of the allegation of sexual abuse, or whatever the reasons that were given, I find that they're just not credible and they're not excusable." Substantial evidence in the record supports this finding. Sarah admitted on cross-examination that she could have asked Harold to care for their daughter while she was in Seattle for medical care of her forehead/bone infection. Harold testified Sarah often would not accept his telephone calls or answer his letters when he called or wrote to confirm visitation. He testified that, on a number of occasions, Sarah had failed to meet him on the appointed dates, places and times to allow visitation. Harold testified that on one occasion, he was told Sarah was in the hospital and thus unable to transport the daughter for visitation, but when he drove to Missoula, Montana, to have an abbreviated visit with the daughter, Sarah met him for the exchange of custody. Harold also testified that after a series of weekends during the spring of 2001 on which he was told Sarah was too sick to travel to meet him to exchange custody, she cancelled another of his visitation weekends because she and the daughter had gone to Seattle, Washington, to visit Sarah's brother. Harold testified he was puzzled about why Sarah was able to travel to visit her brother but not to deliver the daughter to him for visitation.

¶18 Credibility is a matter for the finder of fact to determine. *Marriage of Drake*, ¶ 20. The court's finding on Sarah's excuses for the daughter's availability for visitation, set forth more fully at ¶ 12 above, was not limited to the medical excuse in the spring of 2001, but

related to four years of visitation. We conclude substantial evidence supports the court's finding.

¶19 Sarah complains the court ignored a psychologist's deposition testimony that the daughter would "likely" suffer posttraumatic stress disorder if Harold was named her primary parent. Sarah states permanent damage to the daughter is clearly not in her best interests.

¶20 The fact that the District Court did not make a finding on the above testimony by the psychologist is inconsequential, in and of itself. A court need not make findings on every piece of evidence offered. *Marriage of Drake*, ¶ 23. And, again, credibility is within the province of the finder of fact. *Marriage of Drake*, ¶ 20. Psychologist Sarah Baxter testified that when she saw the daughter during an extended two-week visitation with Harold in August of 2001, the daughter was content, relaxed, chatty and spontaneous, exhibiting "good adjustment to a lengthy visit after a long time of not seeing her father." We hold that the District Court did not clearly err by failing to make a finding on the deposition testimony to which Sarah refers.

¶21 The District Court found "as far as the sexual abuse, I find it to be totally unsubstantiated, and I believe that it was suggested by [Sarah] and that's where this story came from." Sarah contends no factual basis exists for a conclusion that she "suggested" that Harold sexually abused their daughter.

¶22 Again, Sarah's contention is incorrect. First, the District Court's statement concerning its belief was a part of a finding, not a conclusion. The finding that the alleged sexual abuse was totally unsubstantiated was supported by the testimony of every

7

professional witness. Second, a social worker who testified by deposition stated she had "a feeling" that Sarah was coaching the daughter to make the sexual abuse allegations. This testimony provided substantial credible evidence to support the District Court's statement of its belief. Third, even if the finding concerning Sarah's "suggestion" is not supported by substantial evidence, the outcome of the case would not change, because even though the sexual abuse allegations were very detrimental to Harold, the court's decision was not made solely on that issue, but also on other grounds.

¶23 Sarah claims the District Court's conclusion that the daughter's best interests were served by the modification lacks factual support. In that regard, the court recited its considerations of the best interests factors which must be considered under § 40-4-212, MCA. It found that Sarah had "willfully and consistently" refused to allow the daughter to have contact with Harold, and attempted to frustrate or deny contact with him. As to the wishes of the parents, the court stated each parent wanted the daughter to be with him/her, and as to the daughter's wishes, that she wanted to be with Sarah. The court found, however, that the relationship of Sarah and the daughter was "enmeshed" to an unhealthy degree and obsessive on Sarah's part. The court found Harold and the daughter interacted very well. The court found the daughter was well-adjusted to her home, school and community and that moving to be with Harold was going to be very difficult on her, but that Sarah was also planning on relocating, so the daughter would face a transition in any case.

¶24 As to the mental and physical health of all individuals involved, the court found that Sarah has serious psychological issues which she has not faced. It found there had been no

8

allegations of physical abuse and that the allegation of sexual abuse was completely unsubstantiated. The court found no chemical dependency issue for either parent. It found that in the short term and looking at stability of care, the modification would be difficult for the daughter, but in the long run and in relation to her developmental needs, it would be in her best interests.

¶25 Thus, the court found factual support under several § 40-4-212, MCA, best interests factors for its conclusion that the daughter's best interests were served by modification of the parenting plan. Sarah's argument to the contrary fails.

¶26 Finally, Sarah claims the District Court made no findings on the seven criteria for amendment of a parenting plan listed in § 40-4-219(1), MCA. Section 40-4-219(1), MCA, lists factors which a court *may* consider in amending a prior parenting plan, in addition to the mandatory best interests and change in circumstances criteria for modification set forth at §§ 40-4-212 and -219(1), MCA. Because the court *may* consider the § 40-4-219(1), MCA, factors, failure to consider those factors is not error. In fact, the District Court did address one of the § 40-4-219(1), MCA, factors: whether one parent–here, Sarah–frustrated or denied contact between the child and the other parent.

¶27 The District Court's findings of fact are supported by substantial evidence. The court did not misapprehend the effect of the evidence, and our review of the record does not convince us that a mistake has been made. We hold that the District Court did not clearly err in making factual findings, and did not abuse its discretion when it concluded the daughter's best interest required it to change custody.

Issue 2

¶28    Did the District Court abuse its discretion regarding Sarah's motion *in limine*?

¶29    Admission of testimony is a matter of discretion for the trial court, and its decision will not be disturbed absent a showing of abuse of that discretion. *In re Marriage of Arrotta* (1990), 244 Mont. 508, 511, 797 P.2d 940, 942.

¶30    Before the hearing, Sarah filed a motion *in limine* asking the District Court to preclude the testimony of Michael Sullivan, Harold's psychosexual evaluator. The motion was made on several grounds: Sullivan's testimony as to whether he believed abuse had occurred would invade the province of the finder of fact; an expert may not testify regarding the credibility of a child's allegations of sexual abuse if the child does not testify; and testimony regarding polygraph examinations is inadmissible in Montana. In response to Sarah's motion, the District Court ruled Sullivan could give his opinion as to whether Harold was a person who would have a tendency to sexually abuse a minor child, but could not testify about the daughter's credibility or the polygraph examination he administered to Harold.

¶31    Sarah claims that in ruling on the motion *in limine*, the court said it was going to sustain her objection to certain testimony, but then adopted the testimony in its oral statement of findings. This claim is untrue.

¶32    In its findings, the District Court noted, "we have Mr. Sullivan's testimony that he doesn't find any of the factors that would indicate that [Harold] would sexually abuse anybody[.]" This finding does not violate the order *in limine*; in fact, it is a type of testimony the court specifically said it would allow.

¶33    The District Court also stated in its findings that "we have Dr. Miller's testimony that she doesn't think it's credible.  She says more likely that she has not been sexually abused by her father, but that [the daughter] thought that she had been."  Dr. Miller was one of the psychologists who testified by deposition.  There was no motion *in limine* to preclude consideration of any of her deposition testimony, nor does Sarah argue on appeal that Dr. Miller's testimony should not have been considered.

¶34    We hold the District Court did not err nor abuse its discretion regarding Sarah's motion *in limine*.

¶35    Affirmed.


/S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER