No. 03-628

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 110N

IN RE THE MARRIAGE OF
MARY BETH CLAYTON,

        Petitioner and Respondent,

    and

STEPHEN LLOYD CLAYTON,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                     In and For the County of Yellowstone, Cause No. DR02-0705
                     Honorable Diane G. Barz, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Lee Rindal; Rindal Law Firm, Billings, Montana

        For Respondent:

        Tony Alback; Alback & Boschert, Billings, Montana

Submitted on Briefs:  March 30, 2004

Decided:   April 27, 2004

Filed:

_____
                         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Stephen Lloyd Clayton (Steve) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on its findings of fact, conclusions of law, and decree of dissolution. We affirm.

¶3     Steve raises the following issues:

¶4     1.     Did the District Court abuse its discretion in adopting a final parenting plan that did not grant Steve a "right of first refusal" to care for his child?

¶5     2.     Did the District Court abuse its discretion in failing to exclude the $20,000 given by Steve's parents for a down payment on the marital home from the marital estate?

¶6     3.     Did the District Court abuse its discretion in failing to allocate to Mary Beth half of a loan from Steve's parents for the purchase of a truck?

**BACKGROUND**

¶7     Mary Beth and Steve Clayton were married in 1995 and had a daughter, Grace, in 1999. Mary Beth worked full-time throughout the marriage. Steve worked full-time until he lost his job, after which he was primarily a student who worked periodically. Steve's

2

parents provided $20,000 for a down payment on the marital home and loaned approximately $19,000 for the purchase of a truck.

¶8    Mary Beth petitioned to dissolve the marriage in 2002.  Both parties submitted proposed interim parenting plans.  Steve requested that both parents have "the right of first refusal to provide care for their child if the other parent is unable to provide care."  After a hearing, the District Court adopted Mary Beth's proposal, modified to give Steve an additional evening of visitation per week.  The interim parenting plan did not include a "right of first refusal."

¶9    In their proposed asset and debt distributions, both parties proposed dividing the value of the marital home equally, but Steve also requested that he be credited for the $20,000 down payment from his parents.  Both parties acknowledged the existence of the truck loan from Steve's parents, with an estimated balance of approximately $17,000.  Steve requested the truck loan debt be allocated equally between the parties; Mary Beth requested it be allocated entirely to Steve.

¶10    After the hearing, the District Court entered its findings of fact, conclusions of law and final decree of dissolution.  It adopted the interim parenting plan as the permanent parenting plan.  It divided the value of the marital home equally, without excluding the $20,000 down payment, and determined Steve was solely responsible for the truck loan. Steve appeals.

## STANDARD OF REVIEW

¶11 In reviewing parenting issues and the division of marital property in dissolution cases, we initially determine whether a district court's findings of fact are clearly erroneous. If the findings are not clearly erroneous, we will affirm unless the district court abused its discretion. *In re Marriage of Hedges*, 2002 MT 204, ¶¶ 12-13, 311 Mont. 230, ¶¶ 12-13, 53 P.3d 1273, ¶¶ 12-13 (citations omitted).

## DISCUSSION

¶12 **1.    Did the District Court abuse its discretion in adopting a final parenting plan that did not grant Steve a "right of first refusal" to care for his child?**

¶13 Steve contends the District Court improperly failed to grant him a "right of first refusal" to care for Grace instead of her daycare provider when Mary Beth is working and he is not. He advances *Firman v. Firman* (1980), 187 Mont. 465, 469, 610 P.2d 178, 180, as authority for the proposition that a "noncustodial parent is entitled to a fair opportunity to share in the child's love and affection . . . ." He contends that, in determining Grace's best interests, the District Court failed to consider whether she has frequent and continuing contact with both parents and, specifically, failed to take into account the absence of any physical abuse or threat of physical abuse against Grace or Mary Beth.

¶14 Under § 40-4-212(1)(ℓ), MCA, frequent and continuing contact with both parents is in the child's best interests unless such contact would be detrimental to the child. A district court must consider physical abuse and threat of physical abuse in determining whether such contact would be detrimental. While requiring consideration of those factors in determining

whether contact would be detrimental, § 40-4-212(1)(ℓ), MCA, does not limit the court's consideration to those factors. Here, the District Court specified that, "[u]ntil such time as [Steve] ceases to make negative, inflammatory and derogatory references about the mother to the child, visitation will be rigid and limited." After reviewing the record, we conclude the District Court did not abuse its discretion in failing to grant Steve a "right of first refusal" regarding Grace's care.

¶15 **2.      Did the District Court abuse its discretion in failing to exclude the $20,000 given by Steve's parents for a down payment on the marital home from the marital estate?**

¶16      Steve contends the District Court abused its discretion in failing to exclude from the marital estate the $20,000 given by his parents for a down payment on the marital home. He argues the District Court ignored testimony that Steve's father Art had transferred $20,000 directly to the bank handling the home purchase as a gift to Steve alone, as well as a letter submitted to the IRS which identified Steve as the sole recipient. He relies on *Siefke v. Siefke*, 2000 MT 281, 302 Mont. 167, 13 P.3d 937, and *In re Marriage of Eklund* (1989), 236 Mont. 77, 768 P.2d 340, for the proposition that equity in a marital home is properly excluded from a marital estate if the equity arises from a gift or advance on an inheritance made solely to one spouse.

¶17      The District Court heard conflicting testimony about whether Steve was the sole recipient of the down payment or whether the gift was to both Steve and Mary Beth. The trial court is in the best position to judge witness credibility and weigh conflicting evidence.

5

*Marriage of Hedges*, ¶ 22 (citation omitted). Therefore, we conclude the District Court did not abuse its discretion by including the $20,000 in the marital estate.

¶18 **3. Did the District Court abuse its discretion in failing to allocate to Mary Beth half of a loan from Steve's parents for the purchase of a truck?**

¶19 Steve contends the District Court improperly allocated the entire truck loan from his parents solely to him. He asserts the District Court determined the debt did not exist due to the statute of frauds, but then "assign[ed] the judicially-determined non-existent debt wholly to [Steve]." Relying on *In re Marriage of Stewart* (1988), 232 Mont. 40, 757 P.2d 765, he also argues the debt should be partially allocated to Mary Beth because she benefitted from the loan when the truck was sold and the couple used the proceeds. Finally, he contends Mary Beth indicated her responsibility for the debt by writing checks to Art.

¶20 The District Court did comment on the statute of frauds during the hearing, but subsequently listed the truck loan as a debt and allocated it to Steve. If the debt does not exist, Steve cannot be heard to complain. With regard to the allocation of the debt, the District Court heard conflicting testimony about whether Mary Beth benefitted from the loan and assumed responsibility for the debt by writing checks to Art. Determining witness credibility and resolving conflicting evidence are within the province of the district court. *See Marriage of Hedges*, ¶ 22 (citation omitted). We conclude, therefore, that the District Court did not abuse its discretion in allocating the truck loan debt to Steve.

¶21 Affirmed.

/S/ KARLA M. GRAY

6

We concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER