

DA 10-0616

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 142

ROBIN JORDAN, f/k/a Robin Winegar,

        Petitioner and Appellee,

  v.

MARK KALIN,

        Respondent and Appellant.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
In and For the County of Daniels, Cause No. DV 10 2010-12
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Peter L. Helland; Helland Law Firm, PLLC; Glasgow, Montana

        For Appellee:

            Terrence L. Toavs; Law Offices of Terrance L. Toavs; Wolf Point, Montana

Submitted on Briefs:  May 25, 2011

Decided:   June 21, 2011

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Mark Kalin appeals an order in which the Fifteenth Judicial District Court, Daniels County, adopted a permanent order of protection that prohibits him from having any contact with Robin Jordan or her husband. We affirm.

¶2 We consider the following issues:

¶3 *1. Did the District Court err in failing to grant Kalin's motion to dismiss the petition for an order of protection for lack of jurisdiction?*

¶4 *2. Was there sufficient evidence to support a permanent order of protection?*

¶5 *3. Did the District Court punish Kalin for exercising his right to enjoy and defend his liberty?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 In December of 2009, Daniels County, Montana, resident Robin Jordan (Jordan) petitioned for a temporary order of protection against Ohio resident Mark Kalin. Based on the affidavit and other documents filed, the Daniels County Justice's Court granted that petition and, after holding a hearing in July 2010, issued a temporary order of protection effective until December 31, 2010. Kalin appealed to the District Court.

¶7 In the District Court, Kalin moved to dismiss the petition for lack of jurisdiction. The District Court did not rule on that motion prior to the hearing on the petition. Rather, in its findings issued after the substantive hearing, the court found it had jurisdiction.

¶8 Jordan, Kalin, Jordan's husband David Jordan (David), and Jordan's sister-in-law Kara all testified at the November 2010 District Court hearing. The evidence was undisputed that, from 2007 until early in 2009, Jordan--a former Ohio resident--and Kalin

2

each worked one day a week at a livestock sales barn in Damascus, Ohio, where they had occasional contact with each other. Jordan worked at the sales barn as a veterinarian, and Kalin worked in a management capacity.

¶9 Jordan testified that Kalin developed a personal interest in her, which she did not reciprocate. He tried to talk to her, asked for her telephone number, asked her out on a date, and once kissed her on the cheek without her consent. She further testified that, in September 2008, another veterinarian at the sales barn told her Kalin had been asking personal questions about Jordan and had made vulgar comments of a sexual nature about her. Jordan testified she confronted Kalin and told him she had no interest in him and did not want any contact from or with him.

¶10 Jordan further testified that, in December 2008, despite her request for no contact, Kalin sent her a dozen red roses and a card conveying his fond feelings toward her. Jordan again confronted Kalin, telling him she did not want the gift or any contact with him. In order to avoid further contact with Kalin, Jordan told her employer she was not willing to work at the Damascus sales barn any longer.

¶11 Jordan's sister-in-law Kara--who also worked at the Damascus sales barn-- testified that, in February 2009, Kalin told her he loved Jordan and had been in love with her from the moment he saw her. He also offered to pay Kara $1,000 per name if she would identify the person(s) who told Jordan about the sexual comments he had made about her.

¶12 The following month, Kalin hired a private investigator to find out where Jordan lived. Kalin told the investigator he was a creditor of Jordan's, which was not true.

3

Pursuant to an internal anti-stalking policy, the investigator contacted Jordan before disclosing her address to Kalin and, ultimately, did not disclose Jordan's address to Kalin. Shortly thereafter, Jordan applied for an Ohio court order of protection.

¶13 Before the Ohio order of protection case was completed, Jordan and David moved to Montana. Jordan believed the move would stop Kalin from pursuing his interest in her. However, in December 2009, Jordan received an anonymously-sent, "bizarre" collage of photographs and word/phrase cut-outs, urging her to split up with David. The collage was mailed to Jordan's place of employment in Scobey, Montana, from Pittsburgh, Pennsylvania. Jordan testified that Pittsburgh is about a 45-minute drive from the town in which she had lived in Ohio. She also testified she was certain Kalin sent the collage, based on both the postmark and the collage's stylistic and substantive content. The collage included a quote from a Paul Simon song, and Jordan testified Kalin had quoted literature, poems, and songs in his conversations with her. The collage also included a reference to Jordan and David being together for 15 months, which Jordan testified would go back "almost to the day" when she first told Kalin to leave her alone.

¶14 In late January 2010, Jordan and her husband returned to Ohio for a family visit. In an attempt to prevent Kalin from seeking Jordan out, they told no one but family members they would be there. Shortly after the visit, however, Kalin waylaid Kara at the Damascus sales barn and "gloatingly" told her he knew about the visit despite the families' efforts to keep it a secret.

¶15 On Valentine's Day 2010, a gold-plated red rose, inscribed with the words, "I love you most, Robin," was delivered to Jordan by mail at her work address in Scobey. The

4

rose had been sent anonymously direct from the manufacturer, which would not give Jordan the name of the sender. Jordan testified she was certain Kalin sent it to her, in part because he previously had spoken that identical phrase to her.

¶16 Both Jordan and her husband testified that Jordan suffered stress, fear, anxiety, and sleeplessness as a result of Kalin's unwanted contacts.

¶17 In his testimony before the District Court, Kalin admitted being fond of Jordan, hiring a private investigator to find her private phone number and home address in Ohio, and being aware that she was moving to Montana before she moved. He denied making any inappropriate sexual inquiries or comments about her, sending her the collage or the gold-plated rose, or gloating when he spoke with Kara about being aware of Jordan's January 2010 trip to Ohio. Kalin also testified about his prior criminal history, which includes convictions for impersonating a police officer and unlawful restraint of a 17-year-old "girlfriend."

¶18 The District Court found Kalin's denials not credible. It entered findings of fact, conclusions of law, and an order adopting a permanent order of protection prohibiting Kalin from threatening, committing acts of violence against, harassing, annoying, disturbing the peace of, telephoning, emailing, contacting or otherwise communicating with, or coming within 1,500 feet of Jordan or David. Kalin appeals.

## STANDARDS OF REVIEW

¶19 We will overturn a district court's decision to continue, amend, or make permanent an order of protection only if the court has abused its discretion. *Bock v. Smith*, 2005 MT 40, ¶ 29, 326 Mont. 123, 107 P.3d 488. In reviewing the District

5

Court's order, we review its determination of jurisdiction and interpretations of constitutional law for correctness. *Bunch v. Lancair Intl., Inc.*, 2009 MT 29, ¶ 15, 349 Mont. 144, 202 P.3d 784; *Estate of McCarthy v. Montana Second Jud. Dist. Ct.*, 1999 MT 309, ¶ 6, 297 Mont. 212, 994 P.2d 1090. We review a district court's findings of fact to ascertain whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Hidden Hollow Ranch v. Fields*, 2004 MT 153, ¶ 21, 321 Mont. 505, 92 P.3d 1185.

## DISCUSSION

¶20    *1. Did the District Court err in failing to grant Kalin's motion to dismiss the petition for an order of protection for lack of jurisdiction?*

¶21    Kalin argues that Jordan's petition for a temporary order of protection was jurisdictionally flawed because it did not allege more than one act of stalking in Montana, as he contends is required under § 45-5-220, MCA. He points out that the only act mentioned in the petition that was alleged to have occurred in Montana was the sending of the collage to Jordan's Montana place of employ.

¶22    Any person may file a petition for an order of protection if that person is a victim of stalking as defined in § 45-5-220, MCA. *See* § 40-15-102(2)(a), MCA. The offense of stalking is defined, in relevant part, as follows:

> (1)  A person commits the offense of stalking if the person purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly:
>
> (a) following the stalked person; or

6

(b) harassing, threatening, or intimidating the stalked person, in person or by mail, electronic communication, as defined in 45-8-213, or any other action, device, or method.

Section 45-5-220(1), MCA.

¶23 District courts have jurisdiction in all civil matters and cases at law and in equity. Mont. Const. art. VII, § 4(1); § 3-5-302(1)(b), and (c), MCA. Jordan was a resident of Montana when she filed her petition for a temporary order of protection. It alleged Kalin had committed acts in Columbiana County, Ohio, and in Daniels County, Montana, that justified issuance of a protective order. The petition described the events that had occurred in Ohio and, in addition, the bizarre collage sent to Jordan's work address in Montana. Section 46-2-101(1)(a), MCA, provides that "[a] person is subject to prosecution in this state for an offense that the person commits while either within or outside the state . . . [if] the offense is committed either wholly or partly within the state." Pursuant to the "broad assertion of jurisdiction" granted by this section, "Montana has jurisdiction if the offense is committed 'partly within' the state." *State v. Kills on Top*, 243 Mont. 56, 72, 793 P.2d 1273, 1284 (1990) (citations omitted). Here, the petition alleges acts committed partly within Montana. There is no requirement, under either § 45-5-220 or § 40-15-102, MCA, that repeated acts occur within Montana. We conclude the allegations of the petition were sufficient to confer jurisdiction on the District Court. The court did not err in failing to grant Kalin's motion to dismiss.

¶24   *2. Was there sufficient evidence to support a permanent order of protection?*

¶25   Kalin's claim that the evidence was insufficient on grounds that it did not establish repeated acts of stalking in Montana is rejected for the reasons discussed under Issue 1.

¶26   Kalin also claims there is not substantial evidence to support the District Court's findings that he mailed Jordan the anonymous collage in December 2009 and sent her the gold-plated rose. The court relied on Jordan's explanations of why she was certain Kalin sent the two unwanted and bizarre mailings to Montana. It was within the court's function as the finder of fact to assess the credibility of witnesses. *See* M. R. Civ. P. 52(a). The court's finding that Kalin's denials were not credible also was well within its role as the finder of fact. *See In re the Marriage of Nies*, 2003 MT 100, ¶ 18, 315 Mont. 260, 68 P.3d 697.

¶27   Having reviewed the record, we conclude substantial credible evidence supports the District Court's findings of fact and the findings are not otherwise clearly erroneous. The evidence was sufficient for the court to issue a permanent order of protection.

¶28   *3. Did the District Court punish Kalin for exercising his right to enjoy and defend his liberty?*

¶29   Kalin points out that, under the Montana Constitution, he has the inalienable right to enjoy and defend his life and liberty. *See* Mont. Const. art. II, § 3. He contends Finding No. 9 in the District Court's order of protection indicates the court was punishing him for exercising his right to defend his liberty by pursuing an appeal of the temporary order of protection. Finding No. 9 reads, in relevant part:

8

[Kalin's] opposition to the restraining order that was set to expire at about year end also demonstrates his interest in [Jordan]. He has diligently opposed the restraining order even though it had no practical effect on his life and was set to expire soon, both in Justice Court and then on appeal to District Court, requiring travel to Montana twice, yet when questioned about several criminal matters [Kalin] was charged with in Ohio, his responses indicated he hadn't had interest in them, in effect ignoring and blowing them off, letting the lawyers handle it and not caring about the result.

Kalin also points out that, at the hearing, the District Court stated:

[T]he part that spooks me is that you've put all this effort into fighting the thing with no apparent reason for wanting to do it other than you want to be able to contact her and not have it in violation of a temporary order of protection.

Kalin claims the above comments indicate the District Court based its decision to issue an order of protection on the fact that he pursued his legal right to contest the petition in both Justice's Court and in District Court.

¶30 While Kalin is correct that he has a constitutional right to defend himself in court, we disagree that the District Court's comments reflect punishment for Kalin's exercise of this right. To the extent the court contrasted Kalin's demonstrated attitude in this case with his testimony describing his lack of concern about several criminal matters previously filed against him in Ohio, the court was highlighting the peculiarity of Kalin's behavior in choosing to be personally present to fight a Montana protective order, far from his home, that would expire in a matter of a few months. The court commented in particular on its observations of Kalin's behavior in the courtroom, where he watched Jordan throughout the proceedings. The difference between Kalin's attitude about Ohio criminal charges against him--which could directly impact his liberty--and the order of

9

protection proceedings in this case--which would only limit his ability to contact Jordan--was indicative, not of Kalin's interest in defending himself, but of his intense interest in pursuing Jordan. In that regard, we disagree with the District Court's comment that this is a "borderline" case of stalking. Kalin's behavior, as described in the evidence presented to the District Court and as demonstrated at the hearing in this matter, presented ample grounds for the issuance of a permanent order of protection.

¶31 We hold that Kalin has not established the District Court punished him for exercising his right to enjoy and defend his liberty.

¶32 Affirmed.

/S/ BETH BAKER

We concur:

/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS