FILED

03/11/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0042

DA 24-0042

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 48N

IN RE THE ORDER OF PROTECTION OF:

TEDDEE HARRIS CUOMO,

       Petitioner and Appellant,

  v.

DEBORAH L. DERR,

       Respondent and Appellee.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and For the County of Park, Cause Nos. DV-23-110 and DR-23-117
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Teddee Harris Cuomo, Self-Represented, Livingston, Montana

      For Appellee:

          Webster Crist, Crist & Schroeder, PLLC, Livingston, Montana

Submitted on Briefs:  February 5, 2025

Decided:  March 11, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Teddee Cuomo[1] appeals pro se the December 29, 2023 orders of the Montana Sixth Judicial District Court, Park County, denying her a protective order and granting an order of protection against her and in favor of Deborah Derr.

¶3 In 2023, Cuomo and Derr were neighbors. Derr ran a chiropractic practice and non-profit horse sanctuary on her property. Cuomo moved in with her aging father to help care for him.[2] Cuomo and her father accessed their property via an easement along a private road that ran through Derr's property. While friendly at first, their relationships quickly soured.

¶4 In September 2023, Cuomo petitioned on behalf of herself and her father for an order of protection pursuant to § 40-15-201(1), MCA. She alleged that, since 2019, Derr had harassed, threatened, and stalked them. Specifically, Cuomo claimed that Derr monitored them with surveillance cameras and used bear spray on their dogs. She further alleged that, while she walked her horse along the shared access road in late September

---

[1] Cuomo alternatively referred to herself in the proceedings below as Teddee Harris.

[2] Cuomo's father has since passed away.

2023, Derr drove past in her truck, accelerated, and spooked Cuomo's horse, which then kicked Cuomo in the shins. On October 5, 2023, the District Court granted Cuomo a temporary order of protection (TOP) pursuant to § 40-15-201(2), (4), MCA, and set a hearing for October 17, 2023.

¶5 The procedural history here is somewhat convoluted, but the following is apparent from the record. On Derr's motion, the court continued the TOP hearing until mid-November. On November 7, 2023, Cuomo asked to continue the hearing because she was out of town. The next day, the District Court issued an order resetting the hearing for December 1, 2023.[3]

¶6 A week later on November 15, 2023, Derr filed her own petition for an order of protection. She alleged that Cuomo repeatedly allowed her animals (dogs, horses, and goats) to trespass onto Derr's property; Cuomo fed Derr's horses despite being asked not to; Cuomo's dogs bit a volunteer; and Cuomo and her father antagonized Derr and her volunteers by loitering in the road near Derr's property with their dogs, goats, and horses. On November 16, 2023, the District Court issued Derr a TOP and scheduled a hearing on Derr's petition for December 1, 2023, the same day set for Cuomo's. In late November, the District Court reset the hearing on both petitions for December 15, 2023. Two days

---

[3] In its November 8, 2023 order, the court not only vacated the prior-scheduled hearing, but also anomalously vacated the October 5, 2023 TOP without prejudice to filing a new petition. It is unclear from the record why the court vacated the TOP, given that § 40-15-202(1), MCA, provides that a court may continue a TOP hearing "at the request of either party for good cause or by the court," and if it does, "the temporary order of protection must remain in effect until the court conducts a hearing." Despite this procedural irregularity, the parties and court nonetheless proceeded to the December 2023 hearing as if Cuomo's TOP had never been vacated.

3

before the scheduled hearing, Cuomo again asked the court for a continuance, this time for three months, due to her and her father's involvement in a related pending criminal matter. Without formally ruling on Cuomo's motion, the court held the hearing as scheduled at 3 p.m. on December 15, 2023.

¶7 Cuomo appeared pro se. Derr appeared with counsel. The District Court first addressed Cuomo's motion for continuance. Cuomo explained that she was arrested on October 16, 2023, in a related pending trespassing matter, and was concerned that her hearing testimony could conflict with her constitutional protection against self-incrimination. Derr's counsel responded that he would limit the presentation of evidence and avoid discussing any events related to Cuomo's arrest. Over Cuomo's objection and on the grounds that the proceedings had already been significantly delayed, the District Court denied continuance and ordered Derr's counsel to refrain from addressing any October 16, 2023 events.[4]

¶8 Moving on, the court then explained how it would conduct the hearing, and that, as first petitioner, Cuomo would present her case first. The court advised Cuomo that she could testify and present witnesses in any order, subject to cross-examination by Derr's counsel, and that Derr would then present her case under the same process, subject to cross-examination by Cuomo. The parties stipulated to admission of all exhibits prior to the hearing.

---

[4] Cuomo does not challenge this ruling on appeal.

¶9 Instead of testifying herself, Cuomo spent approximately 40 minutes examining Derr and the remaining time examining her father. When Cuomo's questioning of Derr regarding her relationship history with Cuomo's father drew a relevance objection, the court reminded Cuomo:

> So, just don't lose sight of the fact that the focus here is whether anybody is in danger from anybody else such that there should be an order of protection. . . . [W]e only have so much time . . . and you can go around all of the family dynamics, but you are going to run out of time. So, I would stick to the true issues of the conflict, and the alleged danger, if you would.

Approximately 10 minutes later and about halfway through Cuomo's examination of Derr, the following exchange took place:

Court: So, Ms. Cuomo, you're a half an hour into your time. You have –

Cuomo: Oh, I have a specific amount of time?

Court: We have two hours for the hearing.

Cuomo: Well, I mean, even to go through – I mean, I didn't think we were going to make two hours anyway.

Court: We have from 3:00 to 5:00 for the hearing. You each have an hour for your testimony. . . . So, I would suggest that you get to the point of presenting something that has to do with whether or not an order of protection should be granted. . . . I don't really need all the history of the family dynamics.

¶10 Cuomo then pivoted to questioning Derr about the incident where Derr allegedly spooked Cuomo's horse, causing the horse to kick Cuomo in the shins. Derr testified that Cuomo walked the horse within inches of her pickup and that she did not intend for her tires to catch gravel and spook the horse. The District Court gave Cuomo twelve- and five-minute warnings, and when Cuomo's time expired, Derr presented her case. Counsel

5

examined Derr for the entire time allotted. After Derr testified, Cuomo asked: "So, your Honor, I have no cross? I cannot question her? . . . I didn't cross." The District Court answered: "You used your time. The time, as I kept telling you, as you veered off into other matters, your time on direct and cross all counts the same."

¶11 On December 29, 2023, the District Court issued orders continuing Derr's order of protection against Cuomo for three years and denying Cuomo's petition. Among other things, the protective order requires Cuomo to stay 1,000 feet away from Derr and her property, and to use the road easement only for accessing her own property, and not to loiter there or obstruct the road. Cuomo appeals pro se, asserting that the District Court (1) violated her constitutional rights by not permitting her to testify or cross-examine Derr, and (2) erroneously denied her request for a protective order and granted Derr an order of protection against her.

¶12 A district court may "continue, amend, or make permanent" a temporary order of protection upon determination that, "to avoid further injury or harm, the petitioner needs permanent protection." Sections 40-15-201(4), -202(1), -204(1), (3), (5), MCA. "We refuse to overturn [a] district court's decision to continue, amend, or make permanent an order of protection absent an abuse of the court's discretion." *Edelen v. Bonamarte*, 2007 MT 138, ¶ 6, 337 Mont. 407, 162 P.3d 847. "An abuse of discretion occurs when the court acts arbitrarily without the employment of conscientious judgment, or exceeds the bounds of reason and results in a substantial injustice." *Fritzler v. Bighorn*, 2024 MT 27, ¶ 7, 415 Mont. 165, 543 P.3d 571. We review the findings of fact underlying a district court's decision to continue a protective order for clear error, to determine whether they

6

are supported by substantial credible evidence. *Jordan v. Kalin*, 2011 MT 142, ¶ 19, 361 Mont. 50, 256 P.3d 909; *Fritzler*, ¶ 11.

### 1. Cuomo's Constitutional Claims.

¶13 Cuomo's constitutional claims are partly premised on her assertion that she and her father were the "defendants," and Derr the "accuser," in the protection order proceedings. While the procedural history of the separately docketed petitions is somewhat convoluted on the record here, it remains clear that the District Court held the December 15, 2023 evidentiary hearing to resolve both parties' separate requests for protection from each other. At the start of the hearing, the court announced that it was being held on the parties' "cross-motions" for protection in two separate cases, and Cuomo acknowledged that the two petitions were being considered "together" at the hearing. The District Court thus correctly recognized Cuomo and her father as both petitioners *and* respondents, and because Cuomo's petition pre-dated Derr's, allowed Cuomo to present her case first.

¶14 Further, "[a]n order of protection hearing is a civil proceeding" that "does not expose a respondent to criminal liability." *State v. Pingree*, 2015 MT 187, ¶ 17, 379 Mont. 521, 352 P.3d 1086. Nonetheless, the parties to a protective order are guaranteed procedural due process rights to notice and the opportunity to be heard. *In re Kesler*, 2018 MT 231, ¶ 29, 392 Mont. 540, 427 P.3d 77; *Marriage of Stevens*, 2011 MT 124, ¶ 18, 360 Mont. 494, 255 P.3d 154. Accordingly, §§ 40-15-202(1) and -204(1), MCA, ensure the parties a timely hearing, and an opportunity to present evidence and testimony, before a court may continue, amend, or make permanent an order of protection. *Bardsley v. Pluger*, 2015 MT 301, ¶¶ 15-17, 381 Mont. 284, 358 P.3d 907.

¶15 It is apparent that Cuomo had notice of Derr's November 16, 2023 TOP and the scheduled December 15, 2023, 3 p.m. hearing. Moreover, her claims that she was not able to testify at hearing, or to cross-examine Derr are without merit. The District Court explained how the hearing would proceed, and expressly advised Cuomo of her opportunity to present evidence and testimony, and to cross-examine Derr's witnesses. Despite the court's repeated warnings, Cuomo spent nearly all of her allotted time questioning Derr on collateral matters. Cuomo had the opportunity to testify on her own behalf, but did not. She could have reserved some of her allotted time to cross-examine Derr after she was examined by her counsel. Again, Cuomo did not. Therefore, we hold that the District Court did not deny Cuomo due process when it afforded her the opportunity to present her case in support of a protective order against Derr, but Cuomo chose to spend her allotted time directly examining Derr. *See, e.g.*, *Pingree*, ¶ 16 (right to cross-examine satisfied where court advised pro se petitioner of the right at protective order hearing, even though he declined to exercise it).

**2. District Court's Denial of Cuomo's Request for Protective Order and Grant of Three-Year Order of Protection in Favor of Derr.**

¶16 An order of protection is warranted when the petitioner "is in reasonable apprehension of bodily injury," or is "a victim" of certain enumerated offenses. Sections 40-15-201(1), -102(2), MCA. Cuomo alleged in her petition that she and her father were

8

victims of stalking[5] and assault.[6] To those allegations, Cuomo elicited testimony from Derr that when the women met on the shared road in late September, Derr stopped her truck and waited until Cuomo and the horse were past, but that when she "slowly" "proceeded to go forward" up the grade, her "back wheels caught" gravel. Derr said she "stopped immediately" to "make sure" Cuomo and the horse were "okay" because "it wasn't something that [she] was intending to do." Based on Cuomo's reaction, which Derr called "a rant and a rave," Derr assumed Cuomo and the horse were uninjured. Derr also testified that in the past two years, she called the Sheriff regarding Cuomo and her father's animals "probably a lot" of times. She described involving law enforcement when one of Cuomo's or her father's dogs bit a sanctuary volunteer, and when their dogs chased and attacked Derr's horses. Derr said that the Sheriff recommended she install security cameras, which she did shortly after.[7] Cuomo also elicited testimony from her father that he felt "spied on" and "threatened" by Derr's cameras, one of which he said "points directly at our house."

---

[5] "A person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to fear for the person's own safety or the safety of a third person, or suffer other substantial emotional distress." Section 45-2-220(1), MCA. "'Course of conduct' means two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property." Section 45-2-220(2)(a), MCA.

[6] "A person commits the offense of assault if the person purposely or knowingly causes bodily injury to another"; "causes reasonable apprehension of bodily injury in another"; or "makes physical contact of an insulting or provoking nature with any individual." Section 45-2-201(1)(a), (c), (d), MCA.

[7] Counsel played numerous excerpts of surveillance videos during Derr's direct examination.

9

¶17 The District Court concluded that this evidence was insufficient to establish that Cuomo was entitled to a protective order against Derr. The record contains, among Cuomo's hearing exhibits, a grainy "photo of a leg" "taken 9/30." However, Cuomo offered no testimony referencing, much less explaining, this exhibit. She also offered no testimony that the incident in the roadway with the horse and truck caused bodily injury, or reasonable apprehension of bodily injury. Despite the court's suggestion that she could, Cuomo did not testify that her protective order petition allegations were true. Therefore, there was insufficient evidence upon which the District Court could conclude that Cuomo was a victim of assault. *See* §§ 40-15-201(1), -102(2)(a), 45-2-201(1)(a), (c), (d), MCA (defining assault).

¶18 There was also insufficient evidence to support a conclusion that Cuomo and her father were victims of stalking. While Derr admitted that she called the Sheriff "probably a lot" of times, she did so in response to Cuomo and her father's dogs entering her property and attacking her horses and a sanctuary volunteer. This testimony and Cuomo's father's testimony that he felt spied-on and threatened by Derr's security cameras, without more, was insufficient to support a conclusion that Derr purposely or knowingly harassed, monitored, surveilled, or observed Cuomo and her father with knowledge that her conduct "would cause a reasonable person" to fear for her own safety or the safety of another, "or suffer other substantial emotional distress." *See* § 45-2-220(1)-(3), MCA (defining stalking). We hold that the District Court did not abuse its discretion in denying Cuomo's request for a protective order against Derr.

¶19 Like Cuomo, Derr also alleged in her petition that she was entitled to protective relief because she was a victim of stalking by harassment. By contrast, Derr testified in support of her petition that she considered Cuomo's walking her horse up the middle of the road and within inches of her pickup "a bit antagonizing" and denied that she intended to cause Cuomo fear or harm. She testified that, after initially allowing Cuomo's father to access her water for his horses, she stopped when Cuomo brought so many animals onto the property. She eventually padlocked the spigot, and then someone put superglue in the padlock keyhole. Derr testified that Cuomo and her father repeatedly fed Derr's sanctuary horses, who were on special diets, even after being asked not to. When she put up a trellis fence, Cuomo reached through to feed the horses, so Derr built another fence so Cuomo could not reach them. She testified that Cuomo's dogs were "constantly let loose," often entered her property, and "aggressive[ly]" chased and attacked horses, dogs, people, and cars. Derr testified that Cuomo often walked her "entourage" of untethered horses, goats, and dogs up and down the shared road and loitered there, specifically while Derr was outside with clients and volunteers. She showed video of Cuomo trespassing with her animals onto Derr's property. She said that Cuomo's father also loitered in the roadway, often running his dogs behind his car as he slowly drove up and down the road. Derr said that Cuomo also obstructed the roadway with sawhorses.

¶20 Derr testified that her interactions with Cuomo and her father made her feel "frightened just to be on [her] own property"; "unsafe" on her property and in the road; "very uncomfortable [and] very at unease"; "threaten[ed]"; "scared"; and fearful for her own safety and the safety of her clients, volunteers, and animals. Based on the evidence

11

and testimony, the District Court concluded that Derr was a victim of stalking and entitled to a protective order. Because substantial evidence supports this conclusion, we hold that the District Court did not abuse its discretion in granting an order of protection in Derr's favor for a term of three years.

¶21 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22 Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE